94 N.J. Super. 592 (1967)
229 A.2d 667
DONALD H. SCOTT AND THEODORE DUNN, PLAINTIFFS,
v.
THE TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION OF NEW JERSEY, RALPH G. CONTE, H. JOSEPH NORTH AND BOYS' CLUB OF BLOOMFIELD, A CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 23, 1967.
*594 Mr. Vincent J. Joyce and Mr. David C. Thompson for plaintiffs (Messrs. Joyce & Brown, attorneys; Mr. Thompson, on the brief).
*595 Mr. Ralph G. Conte, pro se.
Mr. Paul Alongi for defendant, Boys' Club of Bloomfield (Messrs Marinello, Henkel, Soriano & Klein, attorneys; Mr. Alongi on the brief).
CAMARATA, J.C.C. (temporarily assigned).
This action comes before the court on a motion by plaintiffs for summary judgment in an action in lieu of prerogative writs challenging the validity of a resolution adopted on December 6, 1965 by defendant Town of Bloomfield (hereinafter town) granting a lease to defendant Boys' Club of Bloomfield (hereinafter Boys' Club) and challenging the execution on December 30, 1965 of a lease between the Town and Boys' Club executed pursuant to the resolution.
Ralph G. Conte (hereinafter mayor) and H. Joseph North (hereinafter clerk) are also defendants.
The answer of the town was suppressed by order of this court for failure to answer interrogatories propounded by plaintiffs.
From the affidavits of Theodore A. Rath, Donald H. Scott, David C. Thompson, Conte and North, the basic facts are not in dispute.
Plaintiffs served the Attorney General with a notice to intervene, pursuant to R.R. 4:37-2. The State has not intervened.
The property in question (hereinafter referred to as Center School site) was formerly owned by the Bloomfield Board of Education and used as a grade school for about 75 years. The board leased the Center School site to the Bloomfield College and Seminary (hereinafter college), an accredited nonprofit educational institution providing courses in the arts and sciences. In January 1965 the school site was conveyed by the board to the town, which continued a lease with the college by a renewal expiring August 31, 1966.
*596 Bordering the Center School site is property owned by the college on the north, east, southeast and southwest.
In the spring of 1965 Boys' Club made known to the town its desire to lease a portion of the property then under lease to the college. At that time the mayor was defendant Conte and the town clerk was defendant North. They were also members and directors of Boys' Club and continued in those positions through December 30, 1965.
Public and private meetings were held with the mayor and town council to hear and determine Boys' Club's request. The mayor and clerk attended all the meetings. At one of them the college stated its opposition to a lease to Boys' Club, expressing its desire to purchase the Center School property for $250,000. The mayor has at all times opposed the sale to the college and interrogated the representatives of Bloomfield College at several of the meetings.
On November 29, 1965 the town council met to consider the matter in the council chambers at a so-called conference meeting. Present at this meeting were the mayor as presiding officer, the town council, the town clerk, representatives and numerous students of the college, and other citizens from the community and elsewhere. The mayor called upon Mr. Neil, the town planner, to express his views. He spoke in favor of Boys' Club. The clerk spoke in favor of Boys' Club lease "as a citizen and taxpayer."
After many persons had given their views, the mayor and clerk refrained from further participation and the council members withdrew to a private room. Later one councilman returned to the public chambers and announced that the council had reached a tentative decision to grant a lease to Boys' Club.
On December 6, 1965 the council formally adopted a resolution at a public meeting granting a lease to Boys' Club for 99 years at an annual rental of $1, as more particularly set forth therein. The mayor abstained from voting. The clerk was present at the meeting.
*597 The clerk attended a private conference meeting of the town council in October 1965. The mayor was present and the Boys' Club matter was discussed. The clerk told the mayor he was speaking as a citizen and taxpayer.
N.J.S.A. 40:60-45.3 was never  prior to final enactment  published in the 21 counties of the State.

I
The statute under which the town acted is N.J.S.A. 40:60-45.3. Its legislative history follows. The 1950 Legislature enacted L. 1950, c. 184, whose title reads:
"An act authorizing the leasing of certain real estate by municipalities to incorporated boys' clubs, and supplementing chapter 60 of Title 40 the Revised Statutes."
To be noted is that the title refers only to "boys' clubs." This law was amended five times as follows:
1. L. 1951, c. 132 (Senate Bill 201), whose statement reads:
"This bill would permit any municipality to lease real estate to Y.M.C.A.'s and Y.M.H.A.'s under the same conditions as previously provided by law with respect to Boys' Clubs of America." (Emphasis added)
2. L. 1955, c. 130 (Assembly Bill 546). The bill contained no statement. This law added to the list of clubs any council, club, or troop affiliated with the Boy Scouts of America and Girl Scouts of America.
3. L. 1957, c. 105 (Senate Bill 181). The bill contained no statement. This law added to the list "any local unit of the New Jersey Association for Retarded Children."
4. L. 1965, c. 149 (Assembly Bill 389). The bill contained no statement. This law added "any local Little League" club to the list.
*598 5. L. 1966, c. 253 (Assembly Bill 439). The bill contained no statement. This law added the Pioneer Boys of America, Inc. to the list.
All of the foregoing limit leases to the organizations set forth therein, and no others.
The court takes judicial notice of the fact that many organizations have for their purpose the promotion of the health, safety, morals and general welfare of the community  e.g., Unico, P.A.L., Kiwanis, Lions, Rotary, Elks, Optimist, and many more. It is apparent that the Legislature did not intend to include all of them.
The Supreme Court in Harvey v. Essex County Board of Freeholders, 30 N.J. 381 (1959), has set forth the test in determining whether a law is general or special:
"In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. Budd v. Hancock, 66 N.J.L. 133, 135, 136 (Sup. Ct. 1901). If no one is excluded who should be encompassed, the law is general. * * * In Van Riper v. Parsons, 40 N.J.L. 1, 9 (Sup. Ct. 1878) the court pointed out that local and special laws rest on a false or deficient classification in that `their vice is that they do not embrace all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects.'" at p. 389; (emphasis added)
I conclude that N.J.S.A. 40:60-45.3 is a special law. The 1947 New Jersey Constitution, Art. IV, § VII, par. 8 provides:
"No private, special or local law shall be passed unless public notice of the intention to apply therefor, and of the general object thereof, shall have been previously given. Such notice shall be given at such time and in such manner and shall be so evidenced and the evidence thereof shall be so preserved as may be provided by law."
In aid of this constitutional mandate the Legislature has spelled out the notice requirements in N.J.S.A. 1:6-1 et seq. The pertinent provisions are as follows:
*599 "Whenever, by the constitution, notice of the intention to apply for the passage of any bill is required, such notice shall contain a correct statement of the general object of the bill, be signed by at least one of the parties intending to apply for its passage, and be published, except as required by section 1:6-3 of this title, at least one week before the introduction of such bill, and after the first day of January next preceding such introduction, in at least one of the newspapers published in each county in which the bill is, or is likely, to take effect."
It is undisputed that there never was any publication of notice prior to the enactment of N.J.S.A. 40:60-45.3. The statute is therefore unconstitutional. See Inhabitants of Ewing Tp. v. Inhabitants of City of Trenton, 57 N.J.L. 318 (1894); Sherwood v. Bergen-Hackensack Sanitary Sewer Authority, 24 N.J. Misc. 48, 46 A.2d 151 (Sup. Ct. 1946); affirmed 135 N.J.L. 304 (E. & A. 1947); In re Miller's Petition, 122 N.J.L. 176 (Sup. Ct. 1939).

II
N.J.S.A. 10:4-1 et seq. is the so-called "Right to Know Law." Accompanying the bill was the following statement:
"The purpose of this bill is to further freedom of information to the public of the transaction of governmental business by insuring to the citizens of this State the right to attend public meetings."
N.J.S.A. 10:4-3 provides that "The public shall be admitted to any meeting of a public body at which official action is taken." Section 2 defines "official action" as a determination made by vote.
And section 5 states that "Official action taken in violation of the requirements of this act shall be voidable in a proceeding in the Superior Court."
The conference meeting of November 29, 1965 ceased to be a conference when it was held in the council chambers open to the public, where members of the public spoke and presented their views, the mayor presided and questioned persons, and the town planner and town clerk participated in the discussions. It became a public meeting.
*600 The five Councilmen then retired to a room closed to the public. The mayor and the clerk did not join them. Sometime after the five councilmen had entered the conference room, Councilman Rospond came back into the council chambers and announced to the persons in the audience that the lease had been tentatively approved.
The fact that the five councilmen retired to a private room and then returned to the council chambers and announced their decision indicates, and I so conclude, that they discussed in private the subject matter that was discussed in the open council chambers. Under those circumstances the public was entitled to hear their discussion and how they voted. The failure to do so was contrary to N.J.S.A. 10:4-3. See Schults v. Board of Education of Teaneck, 86 N.J. Super. 29, pp. 46, 47 (App. Div. 1964), affirmed in 45 N.J. 2 (1965).
Even though there was formal passage of the resolution on December 6, 1965, that meeting was merely a perfunctory re-run of the action that the council had already determined to follow on November 29, 1965 and does not cure any defect of the November 29 meeting. See Kramer v. Board of Adjustment, Sea Girt, 80 N.J. Super (Law Div. 1963) 454; Wolf v. Zoning Board of Adjustment of Borough of Park Ridge, 79 N.J. Super; 546 (App. Div. 1963).

III
In Aldom v. Borough of Roseland, 42 N.J. Super. 495 (App. Div. 1956), the court said:
"A public office is a public trust. Borough councilmen, as fiduciaries and trustees of the public interest, must serve that interest with the highest fidelity. The law tolerates no mingling of self interest; it demands exclusive loyalty." (at p. 500)
The mayor's presence at five private and public meetings and more particularly his conduct at the meeting held on November 29, 1965 were in conflict with his holding office and as a member and director of Boys' Club. Even *601 though he did not vote on the resolution of December 6, 1965, his presence at the meetings of November 29 and December 6, 1965, coupled with his opposition to the sale of the school site to the college, tainted the actions of the town council.
What the court said in Aldom applies here:
"The fact that the measure had sufficient affirmative votes to pass without his participation, does not save it from being voided. For, as the Supreme Court reiterated in Pyatt v. Mayor and Council of Dunellen, supra, `the infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable.' 9 N.J., at p. 557." (at pp. 507-508)
Research fails to disclose a case in New Jersey concerning a municipal clerk and a conflict of interests. In the instant case there is no dispute that North attended a conference meeting in October 1965, spoke at the meeting of November 29, 1965, was a member and director of Boys' Club, and at all times urged the granting of a lease to Boys' Club. True, he denies in his affidavit that his position as town clerk made him an influential official of the town. The court not only draws on its own experience as a councilman and as a municipal attorney for 18 years, but takes judicial notice of the fact that a clerk is called upon by members of a governing body to do many things which in most cases result in a spirit of "camaraderie." Even without these observations the clerk's participation in the controversy between Boys' Club and Bloomfield College was in conflict with his duties as clerk and influenced and tainted the action of the council on November 29 and December 6, 1965. What the court said in Aldom, applies to him. The clerk's presence and actions tainted the action of the town council regardless of how slight they may have been.

IV
The 1947 New Jersey Constitution, Art. VIII, § III, pars. 2 and 3, provide:
*602 "No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation.
No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever."
Admittedly, the college was at all times willing to pay $250,000 for the school site property  quite a contrast to a lease for 99 years at $1 a year. It is trifling in comparison to the offer of $250,000, and on its face the payment of $1 a year is a gift. This determination need not await a trial. City of East Orange v. Board of Water Commissioners, etc., 79 N.J. Super. 363, 371 (App. Div. 1963), affirmed 41 N.J. 6 (1963).
The statute and the lease granted pursuant thereto violate the quoted sections of the Constitution.

V
A question of fact is now present as to whether Boys' Club is affiliated with Boys' Clubs of America, and cannot be determined on the present motion.

VI
Plaintiffs contend that the town was required to publicly advertise the offer of Boys' Club, as provided in N.J.S.A. 40:60-26. That statute permits a municipality to sell land or any interest therein. There is no reference in this statute to leasing, nor does the word lease appear.
A sale of property is fundamentally different from a lease since a sale transfers ownership, which includes both title and right to possession, while a lease grants only the use and enjoyment of the thing leased. 51 C.J.S. Landlord and Tenant § 202.
The town was not required to publicly advertise Boys' Club's offer.

*603 VII
For the reasons stated in points I, II, III and IV, plaintiffs' motion for summary judgment is granted.
The resolution of December 6, 1965 is void, as is the lease executed December 30, 1965.
Counsel may submit an appropriate judgment.