151 N.J. Super. 160 (1977)
376 A.2d 607
WOODBURY DAILY TIMES CO., INC., T/A GLOUCESTER COUNTY TIMES, PLAINTIFF,
v.
GLOUCESTER COUNTY SEWERAGE AUTHORITY, JACK C. SHEPPARD, FRANCIS A. WITT, GEORGE BROWN, WILLIAM MARTINELLI AND CHARLES FASOLA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 15, 1977.
*162 Mr. Charles J. Sprigman, Jr. for plaintiff.
Mr. Harold L. Crass for defendants (Herman, Pearson, Crass & Barry, attorneys).
LOWENGRUB, J.S.C.
Plaintiff filed a complaint in lieu of prerogative writs alleging that on May 2, 1977 the individual defendants, acting as an effective majority of the Gloucester County Sewerage Authority (Authority), met with officials of the New Jersey Department of Environmental Protection (D.E.P.) to discuss specific public business of the Authority, without complying with the notice provisions of the Open Public Meetings Act, N.J.S.A. 10:4-9. It was further alleged that the Authority failed to comply with the requirements of N.J.S.A. 10:4-10 at the Authority meeting held on May 3, 1977 in that no public announcement was made as to lack of adequate notice. Lastly, plaintiff alleges that defendants failed to comply with N.J.S.A. 10:4-14 in that no minutes of the May 2, 1977 meeting were made available to either plaintiff or the general public. Plaintiff seeks a judgment restraining defendants from violating the statute and requiring that they prepare and promptly file comprehensive minutes of the May 2, 1977 meeting.
Defendants deny the allegations of the complaint and allege compliance with the Open Public Meetings Act.
*163 Before a determination may be made as to whether there was compliance with the notice provisions of the act the threshold question to be answered is whether the meeting on May 2, 1977 at the office of D.E.P., attended by officials of that agency and three of the five members of the Authority to discuss the terms of an administrative order issued on April 13, 1977 by D.E.P. to the agency, was the type of meeting contemplated by the Legislature to be within the purview of the provisions of the act.
The legislative findings and declaration of the public policy of this State regarding the Open Public Meetings Act are set forth in N.J.S.A. 10:4-7 as follows:
The Legislature finds and declares that the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society, and hereby declares it to be the public policy of this State to insure the right of its citizens to have adequate advance notice of the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion.
It is evident then that the Legislature's mandate is limited to meetings of "public bodies" and not to every meeting held by individuals who are governmental officials. The type of "public body" contemplated by the act is one "organized by law and collectively empowered as a multi-member voting body to spend public funds or affect persons' rights." N.J.S.A. 10:4-7. "[T]herefore, informal or purely advisory bodies with no effective authority are not covered;" further, "to be covered by the provisions of this act a meeting must be open to all the public body's members, and the members present must intend to discuss or act on the public body's business." N.J.S.A. 10:4-7.
*164 The definition of "public body" as used in the act is set forth in N.J.S.A. 10:4-8(a):
"Public body" means a commission, authority, board, council, committee or any other group of two or more persons organized under the laws of this State, and collectively empowered as a voting body to perform a public governmental function affecting the rights, duties, obligations, privileges, benefits, or other legal relations of any person, or collectively authorized to spend public funds including the Legislature, but does not mean or include the judicial branch of the government, any grand or petit jury, any parole board or any agency or body acting in a parole capacity, the State Commission of Investigation or any political party committee organized under Title 19 of the Revised Statutes.
It is evident that it is the declared public policy of the State that meetings of governmental officials constituted as a public body must be held in open meetings assembled at which the public has the right to be present. The members of the public must be invited to be present to hear not only the final vote but they shall also be permitted to be present to hear the discussions of their officials and the verbalizations of their thought processes. See Scott v. Bloomfield, 94 N.J. Super. 592 (Law Div.), aff'd 98 N.J. Super. 321 (App. Div.), app. dism. 52 N.J. 473 (1967).
The public, however, may be excluded from meetings of public bodies as delineated in N.J.S.A. 10:4-12. Suffice it to say, none of the topics of discussion therein enumerated are alleged to have been discussed at the May 2, 1977 meeting. Therefore, no more than a reference to that section of the act need be stated.
The definition of "public body" contains three elements, viz., (1) any group of two or more persons, (2) organized under the laws of this State and (3) collectively empowered as a voting body to perform a public governmental function affecting the rights, duties, obligations, privileges, benefits, or other legal relations of any person, or collectively authorized to spend public funds. N.J.S.A. 10:4-8(a). However, "informal or purely advisory bodies with no effective *165 authority are not covered" by the Open Public Meetings Act. N.J.S.A. 10:4-7.
The definition of "meeting" contains three elements, viz., [1] "any gathering whether corporeal or by means of communication equipment, [2] which is attended by, or open to, all of the members of a public body, [and 3] held with the intent, on the part of the members of the body present, to discuss or act as a unit upon the specific public business of that body." N.J.S.A. 10:4-8(b).
I find the following facts from the evidence presented:
On April 15, 1977 the Authority received an order of the D.E.P. which stated that operation by the Authority of its sewage treatment facility violated state and federal permits, that certain minimum standards of compliance were expected, and that continued violation would result in prosecution. The Authority was ordered, among other things, to remove sludge in a manner acceptable to D.E.P. After receipt of the order the Authority, through one of its members, asked for a meeting with D.E.P. for clarification of the terms of the order. On Friday, April 29, 1977, at about 3:30 P.M., a clerical secretary of the Authority was advised by an Authority member to telephone all of the Authority members to inform them that a meeting with D.E.P. was to be held at its office at 9 o'clock in the morning on Monday, May 2, 1977. She so advised the Authority members and two of the five indicated that they would be present. Of the other three, one said he would not attend, one was not sure of his attendance, and a message was left with the spouse of the fifth member. Suffice it to say that at that time there was no determination whether a quorum of the Authority membership would be present. Notes of the May 2, 1977 meeting were taken by Authority member Sheppard. They indicate that there were present at that meeting four named individuals from D.E.P. plus "others unknown," two representatives of the Attorney General's office, three members of the Authority and its engineer. The purpose of the meeting was thus stated: "[D]iscuss *166 meaning of telegraphic order from D.E.P. instructing G.C.S.A. to truck sludge out of plant if necessary to meet discharge requirements into the Delaware River."
I do not find that the group above designated was a "public body" within the legislative definition of N.J.S.A. 10:4-8(a). The group constituted an assemblage of officials from two separate entities, D.E.P. and the Authority, together with representatives from the office of the Attorney General of New Jersey. First, it is noted that the statutory language defining "public body" is in the singular, viz., commission, authority, board, council, committee or any other group. Second, the assemblage at the May 2 meeting was not, as constituted, organized under the laws of this State. Although both D.E.P. and the Authority are bodies which were organized under and through the laws of New Jersey, the assemblage was not so organized. Third, the persons as they were assembled on May 2 were not empowered as a voting body.
In construing a statute the inquiry in the ultimate analysis is the true intention of the law, and to this end the particular words are to be made responsive to the essential principle of the law. Wollen v. Fort Lee, 27 N.J. 408, 418 (1958). In every case involving the application of a statute, it is the function of the court to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the facts as it finds them. Watt v. Franklin Mayor and Council, 21 N.J. 274, 277 (1956). Further, in the absence of specific intent to the contrary, words in a statute are to be given their ordinary and primary meaning. Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 526 (1964).
Applying these principles to the statute it becomes clear that it is the legislative intent of the Open Public Meetings Act that where meetings are held at which governmental action akin to legislative enactment is to be accomplished, the enacting body's final determination as well as the discussions of each individual member be open to the public. The words used to describe the "public body" are words of ordinary *167 meaning. They treat with the concept of a singular governmental unit which acts as a voting body. It is the result of that vote and the antecedent discussion as it affects the rights, duties, obligations, privileges, benefits or other legal relations of any person or the expenditure of public funds that must be aired to the public. A review of the statutory language evidences that the Legislature did not intend that a meeting held among officials of two public bodies for the purpose of review or clarification of an order issued by one to the other is a meeting of a public body within the intendment of the statute. Neither can the expressed legislative intent be interpreted to include the agenda of the meeting of May 2, 1977 as a meeting within the statutory definition expressed in N.J.S.A. 10:4-8(b). The genesis of the meeting of May 2, 1977 was for an explanation by D.E.P. of its order of April 13, 1977. The uncontroverted testimony was, and I so find, that the meeting was intended to be for informational purposes and, as testified to by Authority member Sheppard, to "see if the order meant what it said."
Suffice it to say, I find that the group assembled was not a "public body" within the statutory definition.
Accordingly, I find that there was no violation of the Open Public Meetings Act. The complaint is therefore dismissed. No costs.