712 A.2d 200

LAKE LENORE ESTATES, ASSOCIATES, PLAINTIFF–APPEL-
LANT, v. TOWNSHIP OF PARSIPPANY–TROY HILLS BOARD
OF EDUCATION, FRANK CALABRIA, ELLEN DECKER, HA-
ROLD FEINTUCH, PAUL GILBERT, ALAN GORDON, JERRY
REYNOLDS, DAVID SHAFFER, VIOLET SCHICKE AND KA-
THI WYMAN, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 5, 1998—Decided June 9, 1998.

410

Before Judges PETRELLA, SKILLMAN [1] and LESEMANN.

*Eric R. Breslin* argued the cause for appellant (*Hannoch Weisman*, attorneys; *Mr. Breslin* of counsel and on the brief; *James P. Flynn*, on the brief).

*John W. Reinman* argued the cause for respondents (*Lamb, Hartung, Kretzer, Reinman & DePascale*, attorneys; *Mr. Reinman*, on the brief).

The opinion of the court was delivered by

LESEMANN, J.S.C. (temporarily assigned).

Plaintiff appeals from a summary judgment dismissing its three count complaint against the Board of Education of the Township of Parsippany–Troy Hills (School Board or Board) and the nine individually named members of that Board, and a subsequent order finding plaintiff liable to defendants for counsel fees and costs pursuant to the Frivolous Claims Statute, *N.J.S.A.* 2A:15–

---

[1] Judge Skillman did not participate in oral argument. However, the parties consented to his participation in the decision.

59.1 *et seq.* The case arises from a proposed housing development presented by plaintiff Lake Lenore Estates Associates (Lake Lenore) which met strenuous opposition within the Township of Parsippany–Troy Hills (Township). David Shaffer (Shaffer), one of the individually named defendants, lived near the project site and took a leading role in opposing the development. Shaffer was a member of the School Board and plaintiff claims he used his School Board position to impede the project before the Township Planning Board and thus attempted to further his private interest by improper use of his official position. The first two counts of the complaint sought disclosure of two writings Shaffer had sent to other School Board personnel and the third count sought compensatory and punitive damages against Shaffer, the eight other members of the School Board and the Board itself.

The trial court concluded that the suit involved "an absolutely incredible complaint"; that it dealt with "the most ephemeral of claims imaginable"; that when Shaffer argued his position before the Planning Board, he had done nothing more than exercise rights available to any citizen; and that there was no basis to believe that anything Shaffer or the School Board did had any adverse effect on plaintiff's development. The court thus dismissed the complaint notwithstanding plaintiff's objections that it had not yet conducted discovery. Thereafter, when defendants sought counsel fees under the Frivolous Claims Statute, the court determined that there was nothing "frivolous" about the first two counts of the complaint, but that the third count was frivolous and infected the first two counts as well. It thus determined that the statute was applicable and awarded counsel fees and costs to defendants.

We conclude that the court was correct in dismissing the complaint in its entirety as against Shaffer and the other individual board members and it was also correct in dismissing the third count of the complaint as against the Board. However, as the trial court acknowledged, the first two counts should not have been dismissed as against the Board. For reasons discussed

below, we conclude that the issue of fees under the Frivolous Claims Statute must be remanded for further proceedings.

Plaintiff first submitted its development proposal known as the Glenmont Project (Glenmont) to the Township in 1991. It involved a one hundred-six acre tract with proposed construction of 781 housing units, 100 of which (together with an additional seventy senior units) would count toward meeting the Township's state-mandated affordable housing quota. The proposal met considerable opposition. Shaffer and his wife, Terry, who lived adjacent to the proposed site of the project, were leaders in that opposition and they were officers in a group formed to oppose the project, the Powder Mill Homeowners Association. They frequently spoke at planning board meetings and their names and telephone numbers appeared in advertisements and circulars that opposed the project. The rhetoric at planning board meetings was heated and the discussions, charges, and countercharges continued during the early 1990's, through 1994 and into 1995. While Shaffer did not overtly claim that his status as a School Board member gave him particular expertise, at least some of his presentations at Planning Board meetings revolved around the Township's school system. At one meeting, for example, he questioned presentations and projections of school capacity submitted by the developer and urged the Planning Board to ask the School Board directly for such information. He also urged those present to read a publication prepared by the School Board concerning school capacity entitled "The Shareholder's Report for 1994." In October 1994, whether or not because of Shaffer's requests, the Planning Board did write to the Superintendent of Schools asking for any comments that he or the School Board might have concerning the project.

Early 1995 brought a continuation of the dispute. On March 20, 1995, the Planning Board approved a modified plan for the project, which included 610 units. In December, however, the Law Division set aside that approval and in that same month the Planning Board also approved a revised proposal containing 691 units. In

February 1996 the Township's governing body introduced a new zoning ordinance which would have barred virtually any development on plaintiff's site. That amendment was not adopted.

In early 1996 the developer and the municipal officials participated in mediation designed to resolve their differences. The mediation culminated in an agreement on June 28, 1996, providing for a scaled-down version of the project with a total of 356 units, including no rental units and no affordable housing units. In September 1996, the Township adopted an ordinance having the effect of approving that agreement, and the revised project then continued its way through the remaining necessary municipal approvals.

Plaintiff's representatives claim that during early 1996 they became suspicious that Shaffer was conducting "behind the scenes" machinations in opposition to its project. In an effort to investigate those suspicions plaintiff tried to see two letters or memoranda which it understood Shaffer had written to other School Board personnel concerning the project. On March 20, 1996, plaintiff's attorney wrote the School Board president, formally requesting examination of the writings. The matter was referred to the Board's attorney. Then, for the remainder of March 1996 and through most of April 1996 there ensued an exchange of letters and a series of conversations in which plaintiff's attorney attempted to obtain the writings, and the Board's attorney indicated that he was looking into and trying to resolve the matter. All of that ended in late April 1996 when the Board's attorney advised that the Board would not release the writings. On May 29, 1996, plaintiff filed its complaint.

The complaint refers to the Glenmont project and in paragraphs five and six of its introductory position reads as follows:

5. The Board and Board Members have conducted certain reviews and made certain recommendations with respect to Glenmont insofar as the project will impact school operations in the community.

6. Upon information and belief, at least one Board Member, acting purportedly in his/her capacity as a member of the Board of Education, or invoking the authority of the Board, has made written and other communications with other officials and

citizens of the community, which communications are injurious to the interests of Glenmont and may well be actionable under the law.

It continues by noting plaintiff's requests to examine and copy "all records and writings" of the Board and all "communications by and to the members of the Board" which relate to plaintiff or its project. It says the Board has "responded with a limited production, but has failed and refused either to identify or produce records or writings of Board Members."

The complaint then sets out three counts, each of which incorporates by reference the introductory provisions. The first count asserts that the Board's refusal to produce the requested records violates the Right to Know Law, *N.J.S.A.* 47:1A–2. The second asserts that the plaintiff has a common law right to examine the writings. The third count contains the controversial provisions, set out in four short paragraphs:

19. Injurious and malicious actions by any Board Member acting or purporting to act under the aegis of the Board of Education, by its authority or under its capacity, constitute a tortious interference with plaintiff's rights at law and with its prospective economic advantage.

20. Concealment of such actions of any Board Member or by the Board of Education constitutes complicity herein and renders the Board of Education and its members responsible and liable therefor.

21. Upon information and belief, such actions have been taken against the interests of Lake Lenore by at least one Board Member.

22. The refusal of the Board to produce the records requested by Lake Lenore constitutes complicity with and tacit approval of the actions of its Member or Members.

After defendants answered the complaint, plaintiff served a broadly worded Demand for Documents which sought virtually all writings in the Board's possession dealing with the Glenmont project. Shortly thereafter, defendants filed a motion for summary judgment which was heard on January 10, 1996. Following argument, the court concluded that the complaint failed to set out any improper action on the part of any of the defendants— including David Shaffer, on whom much of the argument focused—and determined that the complaint should be dismissed in its entirety. An order to that effect was entered on February 2, 1997.

Shortly thereafter the defendants filed requests for counsel fee awards under the Frivolous Claims Statute, *N.J.S.A.* 2A:15–59.1. Argument on that motion was held on February 28, 1997. On March 20, 1997, the court issued a letter opinion in which it noted it had now concluded that plaintiff was "probably" entitled to the relief requested in the first two counts of its complaint (production of the writings) and it therefore annexed copies of those documents to its opinion. It went on, however, to conclude that while the first two paragraphs of the complaint were not "frivolous" within the meaning of the Frivolous Claims Statute, the third count was, and it had "infected" the entire complaint. Accordingly it concluded that defendants were entitled to the counsel fee awards they requested and it entered a judgment embodying those awards.[2] This appeal followed.

I

The essence of plaintiff's complaint against Shaffer is the claim that Shaffer was a leader in opposing plaintiff's Glenmont development and that his opposition was motivated by a belief that the project would have an adverse effect on Shaffer's own adjacent property. Plaintiff acknowledges that Shaffer had a right to take that position and argue against the project but it claims that he "crossed the line" that separated his private position from his public position as a School Board member. It claims

that Mr. Shaffer was wearing two hats in this case and was acting under ... a clear conflict of interest. He was at one point a member of the ... school board, charged with ... submitting certain written documents to the planning board on this project, while at the very same time he had an absolute, emphatic, personal vested interest against this project, which he campaigned against publicly, incessantly, and vocally in the community.

---

[2] There were four separate motions for fees by the attorneys representing the different defendants: one representing the School Board; one representing David Shaffer; one representing seven other individual Board Members; and one representing Paul Gilbert, a Board Member who had elected to have separate representation. The court saw no reason for Gilbert's separate representation and accordingly it rejected his request for fees.

It argues that as a result of Shaffer's personally motivated opposition to plaintiff's project, he was required to forego "the right to function as a member of the School Board" with respect to this project.

Plaintiff is certainly correct that a municipal official with a personal interest that conflicts with his official role is required to abstain from any official action which affects that personal interest. *Sokolinski v. Township of Woodbridge,* 192 *N.J.Super.* 101, 469 *A.*2d 96 (App.Div., 1983); *Scott v. Town of Bloomfield,* 94 *N.J.Super.* 592, 229 *A.*2d 667 (Law Div.1967), *aff'd,* 98 *N.J.Super.* 321, 237 *A.*2d 297 (App.Div.1967); *Zell v. Borough of Roseland,* 42 *N.J.Super.* 75, 125 *A.*2d 890 (App.Div.1956). Further, while plaintiff acknowledges an absence of supporting New Jersey authority, we shall assume for present purposes that a public official who violates that rule and uses his official position to further his private interests may be required to respond in damages to one injured by his improper actions. *See, Pleas v. City of Seattle,* 112 *Wash.*2d 794, 774 *P.*2d 1158 (1989); *City of Rock Falls v. Chicago Title & Trust Co.,* 13 *Ill.App.*3d 359, 300 *N.E.*2d 331 (1973). The difficulty with plaintiff's argument, however, is that it demonstrates no cause-effect relationship between any action by Shaffer and any detrimental effect on plaintiff's project. There is no showing, nor even a rational argument, to indicate that anything Shaffer did as a School Board member had any impact of any kind on the approval, disapproval or modification of plaintiff's proposed development.

At the argument on defendants' motion for summary judgment, the trial court questioned plaintiff's counsel more than once as to the theory of plaintiff's case. The court wanted to know—and it asked in just so many words—what it was that plaintiff claimed Shaffer had done to sabotage plaintiff's project. The answer from counsel was that Shaffer had written memoranda to be submitted by the School Board to the Planning Board. But when counsel was asked what those memoranda had accomplished (i.e., what result, or harm, they had produced) counsel, essentially, had no

answer. And that lack of any coherent theory of liability, the absence of any basis to believe (or even claim) that Shaffer had adversely affected plaintiffs project was the major reason for dismissing the complaint. As the court put it,

Now I appreciate the fact that a plaintiff may not at the beginning of its lawsuit have in hand all of the proofs that it will ultimately need to be able to establish its claim. And that's why we have liberal discovery in our civil action process in this state. But before a plaintiff undertakes to file a lawsuit against someone and to put them to the economic cost, to say nothing of the psychological and emotional cost of dealing with the lawsuit, the plaintiff ought at least to be able to articulate a plausible theory of wrong that has been committed by the defendants. And there is no such plausible theory.

The defendant doesn't even say, I was entitled to get a development approval and I didn't because the Board of Education or some member took this, that, or the other action that resulted in a denial of my approval.

\* \* \*

... I don't know what the wrong is; that some false statement was made, some incorrect position ... for which there was no basis that caused a delay or caused some money damages. None of that is set forth in the complaint. Only a vague belief that somehow they interfered with the economic advantage of the plaintiff. Now that is irresponsible litigation. And that is litigation which is phantom litigation.

As noted, after the court had dismissed plaintiff's complaint, defendants sought awards of counsel fees under the Frivolous Claim Statute, *N.J.S.A.* 2A:15–59.1. In resolving that motion the trial court again discussed plaintiff's complaint and the absence of any showing by plaintiff that Shaffer or any other defendant had played a part in any Planning Board action which might be deemed adverse to plaintiff's interests. Referring to Shaffer's actions and plaintiff's claim against him, the court said,

[t]he simple fact is that the Board of Education never took any position in opposition to the development proposal of the plaintiff. At various stages while the plaintiff's development proposal was pending before the Planning Board, the Planning Board did ask for comment or reaction to some aspect of the proposal from officials of the school district. Officials of the school district did send comments to the Board on three occasions.... I have now read those letters, and I find absolutely nothing inappropriate in any of them. The letters raise the most routine of questions about some aspects of the development proposal. The plaintiff had all those letters in hand before it instituted this present civil action.

In short, at the time that this present civil action was instituted there was absolutely no indication that the Board of Education had opposed much less opposed inappropriately, the plaintiff's development application. On the contrary, all tangible evidence of the position of the Board of Education on this development application was non-confrontational and non-adversarial and was entirely appropriate in tone and content.

We agree with that analysis and with those conclusions. We have examined the two memoranda from Shaffer to the School Board personnel and the three letters from the School Board to the Planning Board. None could be deemed adversarial or challenging, and none could reasonably be deemed to have led, or even contributed, to any adverse action concerning the Glenmont development.

Plaintiff argues, correctly, that summary judgment should normally be granted only sparingly at an early stage of the proceeding when the party opposing the motion has not had an opportunity to complete discovery. *See, e.g., Velantzas v. Colgate–Palmolive Co., Inc.,* 109 *N.J.* 189, 193, 536 *A.*2d 237 (1988); *D'Alia v. Allied–Signal Corp.,* 260 *N.J.Super.* 1, 11, 614 *A.*2d 1355 (App.Div.1992). However, this is not a case in which plaintiff seeks an opportunity to develop evidence to prove its contentions. The difficulty here is that there are no clear contentions and there is no supportable theory of the case. Rather there are simply uncorroborated and non-specific suspicions which we find insufficient to withstand a motion for summary judgment. Accordingly, we are satisfied that the trial court's decision to grant summary judgment dismissing the complaint against Shaffer was correct and it is therefor affirmed.

II

The third count of plaintiff's complaint against the School Board and the seven board members other than Shaffer has even less merit than the complaint against Shaffer. Plaintiff does not allege any wrongdoing by those defendants other than what it charges is responsibility for Shaffer's alleged wrongdoing through their non-production of the documents demanded by plaintiff. That non-

production is said to constitute "complicity" with Shaffer. In its briefs on appeal plaintiff does not develop its liability theories with any greater specificity.

■ Since we find no demonstration of wrong-doing by Shaffer, it follows that the complicity theory of liability against the other defendants must also fail. But even were we to assume that Shaffer acted improperly, we would find no basis for liability against the other defendants on the theory advanced by plaintiff. Reduced to its essence, the claim against the Board and its eight members other than Shaffer is that they can be liable in damages, not only for something they did, but rather for something that someone else (Shaffer) did, because they did not prevent him from doing it. That is a potentially far reaching proposition. Plaintiff cites no support for it and we find none in common sense or policy.

The trial court referred to the chilling effect which would inevitably be felt by citizen-volunteers serving as unpaid school board members if they were required to face potential financial liability for something that one of their colleagues did. We agree. An allegation of active, knowing assistance or participation in wrongdoing by another Board member, or by the Board itself, might serve as a basis for a charge of individual or Board responsibility. Here, however, we have no such claim. We have only a charge that the other defendants did not prevent Shaffer from working his alleged mischief. We would see great potential harm in requiring such individuals to retain counsel, mount a personal defense, and disrupt their personal lives without a more compelling showing, or even allegation, than anything presented here, nor do we find any basis for potential liability against the Board itself.

III

The remaining issue involves the award of counsel fees to the defendants under the Frivolous Claims Statute, *N.J.S.A.* 2A:15–59.1. In its essential provisions, that statute provides as follows:

a) A party who prevails in a civil action, ... may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the non-prevailing person was frivolous.

b) In order to find that a complaint, counterclaim, cross-claim or defense of the non-prevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:

1) the complaint, counterclaim, cross-claim or defense was commenced in bad faith, solely for the purpose of harassment, delay or malicious injury; or

2) the non prevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

As noted, in its decision on defendants' applications for counsel fees the trial court said that its earlier dismissal of the first two counts of the complaint was probably a mistake. That conclusion seems sound. And even if one were ultimately to conclude that plaintiff was not entitled to either or both the documents demanded, there would still be no basis to charge (nor do we understand that defendants do charge) that the first two counts of the complaint violate the Frivolous Claims Statute. Indeed, the trial court made abundantly clear that the first two counts were not "frivolous."

Thus, an initial question is whether a three-count complaint with two admittedly "non-frivolous" counts, can be treated as "frivolous" on the basis of the third count only. In concluding that it can, the trial court stressed the difference between the counts. The first two, the court correctly noted, involved relatively simple demands, subject to uncomplicated and inexpensive resolution. The third, however, involved more complex and difficult issues and could be expected to involve considerably more expense as well as "emotional and psychological costs" to the individual board members named. In that view, which we find reasonable and realistic, the third count may properly be treated as severable from the first two for purposes of determining whether it is "frivolous." To conclude, as plaintiff would have us do, that a multi-count complaint could never be deemed frivolous if one or more counts were found non-frivolous, would presumably permit any pleader to

avoid the impact of the statute simply by including one or more reasonable charges within an otherwise vindictive, malicious and frivolous complaint. Hypothetically, one could conceive of a ten-count complaint with nine "frivolous" counts and one non-frivolous which, under plaintiff's thesis, would be immune from treatment as a frivolous complaint. There is little in logic or policy to commend such a result.

Plaintiff argues that *Iannone v. McHale,* 245 *N.J.Super.* 17, 32, 583 *A.*2d 770 (App.Div.1990) compels the result it urges. We disagree. We do not believe *Iannone* addressed the issue presented here. *Iannone* involved an election challenge in which the plaintiffs were three candidates for a municipal governing body, one of whom had won and two of whom had lost. The substance of the challenge turned on the removal five days before election of 177 voter names from the registration books. The removal proceeding ostensibly had been taken pursuant to a statutory procedure designed to weed out unqualified voters, but those carrying it out had ignored procedural safeguards requiring notice to the affected parties and to the Attorney General. The complaint contained three counts challenging the removal procedure (and thus the election result) with each count also seeking compensatory and punitive damages. It named as defendants the County and Municipal Boards of Elections and also three opposing candidates. The case was settled within approximately one month of the filing of the complaint, with plaintiffs dropping their challenge to the election result and defendants acknowledging that the removal procedure had been improperly carried out. Thereafter, the trial court granted defendants' request for the award of counsel fees under the Frivolous Claims Statute.

It is not completely clear precisely what it was that the trial court considered "frivolous" about the plaintiffs' complaint. The opinion notes that the plaintiffs had initially agreed to drop their damage demand, although they thereafter declined to do so against one of the defendants. It also comments that the trial court had been concerned with the joinder of the three individual

defendants, as well as the inclusion of damage claims within a complaint challenging an election result. And it observes that the trial court had apparently been more concerned with the "continued maintenance (of the suit) rather than its initial institution." *Id.* at 31, 583 *A.*2d 770.

In any event, this court reversed the trial court's award of counsel fees, concluding that plaintiffs' complaint was substantively sound and not frivolous and was based on legitimate, sustainable grievances. The test of whether a complaint should be regarded as "frivolous," the opinion made clear, must be based on a reading of the pleading "as a whole." *Id.* at 32, 583 *A.*2d 770. *Iannone*, in short, simply did not involve a separate, severable, allegedly frivolous count joined with others acknowledged to be non-frivolous. Whatever portions of the complaint in *Iannone* may have been regarded as frivolous were intertwined with, and formed part of, the non-frivolous allegations contained in the three counts of the complaint.

Nor should the direction to read a pleading "as a whole" be interpreted—as plaintiff seems to interpret it—as a holding that a complaint can be treated as frivolous only if every allegation in it is frivolous. *Iannone* does not so hold. And it does not suggest that a separate, severable count of a complaint which may be frivolous cannot be grounds for sanctions under *N.J.S.A.* 2A:15–59.1 simply because other counts of the complaint may not meet that description.

Examination of the opinion in *Romero v. City of Pomona*, 883 *F.*2d 1418, 1429 (9th Cir.1989), cited and quoted in *Iannone*, supports that reading of *Iannone*. The court in *Romero* made clear that it was rejecting a request for sanctions based on a claim that some of the allegations in an otherwise non-frivolous complaint might, viewed by themselves, be treated as frivolous. As the court put it, the request for sanctions was made "because several of the allegations raised in the complaint and at the outset of discovery . . . either later proved to be without foundation or

were otherwise abandoned as the trial progressed." *Id.* at 1429. It was in that context that the court held that,

> [s]anctions are appropriate 'only when the pleading as a whole is frivolous or of a harassing nature, not when one of the allegations or arguments in the pleading may be so characterized.'. . . . That some of the allegations made at the outset of the litigation later proved to be unfounded does not render frivolous a complaint that also contains some non-frivolous claims.
>
> [*Ibid.*]

In sum, *Iannone* is not inconsistent with the conclusion that we find sound: that sanctions under the Frivolous Claims Statute may be sought based on one separate and severable count of a complaint, at least when that count forms a significant and substantial part of the overall complaint.

The next question is whether the third count here meets the statutory definition of a "frivolous" complaint. There are two bases on which one could reach that conclusion: either that the complaint was filed "in bad faith solely for the purpose of harassment, delay or malicious injury"; or that "plaintiff knew or should have known" the complaint "was without any reasonable basis in law." *N.J.S.A.* 2A:15–59.1. Without specifically saying so, the trial judge seems to have based his determination on both, with some indication that he considered the complaint so devoid of "any reasonable basis in law" that it must also have been filed in bad faith:

> I viewed the claims for relief set forth in count three as amounting to an attempt to punish Mr. Shaffer for his opposition to the plaintiff's development application and as an attempt to punish the Board and its other members for Mr. Shaffer's actions, even though there was no reasonable basis for believing that they had anything to do with Mr. Shaffer's conduct in opposing the development application.
>
> \* \* \* \*
>
> In short, I viewed the entire action as being inherently an oppressive and unwarranted attack on the defendants.

To the charges against the Board and the individual members other than Shaffer, the court added:

> The third count of the complaint ... purports to assert a claim for tortious interference with prospective economic advantage and seeks compensatory and punitive damages against the Board of Education and each of its members

individually. When the complaint with that count in it was filed in this action and served upon the defendants there was not a shred of evidence that the Board of Education had done anything tortious in connection with the plaintiff's development application, and there was not a shred of evidence that any members of the Board of Education, other than David Shaffer, had individually done anything at all in connection with plaintiff's development application, much less that any of those individual members had done anything tortious in connection with the application.

It therefore concluded that, "there was absolutely no basis in fact or in law for believing that any claim could plausibly be asserted against the Board and those members."

In the documents submitted on the motion for summary judgment and the request for counsel fees, and also during the arguments on those motions, plaintiff's attorney set forth his rationale and justification for the third count of the complaint. He acknowledged that plaintiff could not, at that initial stage of the proceedings, prove that Shaffer had undermined the Glenmont project by improper use of his public position to further his private ends. He maintained, however, that plaintiff strongly suspected that Shaffer had done just that. He said that defendants' refusal to disclose the writings plaintiff wished to examine tended to confirm those suspicions and he maintained that plaintiff had conducted lengthy, albeit ultimately unsuccessful, negotiations in an attempt to obtain the writings without litigation. When the trial court asked why plaintiff had not simply filed a complaint with two counts and then filed a third count only if and when it found that the writings in question supported its suspicions, plaintiff's attorney referred to his fear of the preclusionary effect of the entire controversy doctrine:

Now I can address why I made the determination and my firm made the determination to include a third count for damages. And, quite simply, as just about every practitioner in this state is, we spend most of our days looking over out shoulder at the entire controversy doctrine. And it was my concern that based upon what we knew and what we had heard about the supposed contents of these two memos, that if they were as bad as advertised and I filed a two-count complaint, and Mr. Northgrave (the Board attorney) said to me, ah, you got me, here they are, you got them, law suit is over, and those documents were the ammunition that I needed to bring a damages claim against the School Board and its individual members, that he would have an excellent motion to knock me out of the box.

> And so as a matter of pleading strategy, I'm—you know, *this was not a Mosberg decision, your honor, this was a Breslin (plaintiff's attorney) decision;* and to the extent—you know and I made it and my firm made it, we decided that for our own malpractice concerns, that it would be better to put in a third count, pled upon information and belief, loosely pled, so that we wouldn't get the court house door slammed in our face three months down the road if the documents were as potent as we were led to believe. (Emphasis added)

Later the court commented that,

> Well, I, off-hand, don't think—I don't think he'd be barred by—his client would be barred by the entire controversy doctrine from certain—you know, from bringing an action if these documents otherwise would form the basis for it, but the doctrine is troublesome. OK.

To that, plaintiff's counsel replied,

> Your Honor, I mean, there's an appellate division decision every three days, which—and that's quite literally—which moves the frontier a little in this direction, a little in that direction, and a little in that direction. And I'm not aware of very many practioners who could stand up here at this point and tell you what they can and cannot do.

■ In *McKeown–Brand v. Trump Castle Hotel & Casino,* 132 *N.J.* 546, 626 *A.*2d 425 (1993) the Supreme Court, in the context of the Frivolous Claims Statute, dealt with a claim that allegedly wrongful action was taken on the advice of an attorney. The Court concluded that "a client who relies in good faith on the advice of counsel cannot be found to have known that his or her claim or defense was baseless." *Id.* at 558, 626 *A.*2d 425. Thus, if the claim of plaintiff's attorney is accepted, then Lake Lenore "cannot be found" to have known that the third count to its complaint "was baseless." *Ibid.* And, if indeed the decision to file that count was a decision made by plaintiff's counsel and not by plaintiff itself, then plaintiff cannot be held responsible for that action under the Frivolous Claims Statute.

■ Nor can plaintiff's counsel be liable for fees under the statute. As the Court noted in *McKeown–Brand* the statute does not regulate the activities of attorneys and it is the Supreme Court, not the legislature, that must regulate the practice of law.[3] *Id.* at 556, 560, 626 *A.*2d 425.

---

[3] It was in *McKeown–Brand* that the Court asked the Committee on Civil Practice to consider adoption of a new rule of procedure comparable to Federal

In its opinion here the trial court concluded that the expressed concern about the entire controversy doctrine had no merit. While it acknowledged that the doctrine "is an expanding one and I know that lawyers and judges are having a difficult time in grasping all of its ramifications," the court concluded that,

It is inconceivable that the doctrine requires someone in the position of the plaintiff to anticipate every possible wrong which might imaginably be disclosed by as yet unseen documents and to assert in advance claims based upon those conceivable wrongs, all at peril of losing automatically important rights. That is not and cannot be what the entire controversy doctrine is about. A distorted, expansive view of that doctrine cannot be used to justify a lack of elementary good judgment, restraint and fairness in instituting litigation.

■ There are two difficulties with this analysis. First, plaintiff is not here speaking of "every possible wrong" which might be disclosed. The expressed concern is about a specific wrong which plaintiff asserts that it suspected, and had reason to suspect, had been committed by defendant. Given that preexisting knowledge and concern, a fear that a court at some later date might assert that plaintiff should have joined a possible cause of action stemming therefrom is not so unreasonable as to be "inconceivable." It is clear that under the entire controversy doctrine a trial court has the authority to sever or bifurcate different counts of a complaint. *R.* 4:38–2; *R.* 4:30A; *Rendine v. Pantzer,* 141 *N.J.* 292, 310, 661 *A.*2d 1202 (1995); *Perretti v. Ran–Dav's County Kosher Inc.,* 289 *N.J.Super.* 618, 624, 674 *A.*2d 647 (App.Div.1996). However, the party who wishes to assert those complaints is required to bring them before the court and let the judge, not the attorney, make that decision. *R.* 4:30A.

---

Rule of Civil Procedure 11 to govern the activities of attorneys and possibly provide for imposition of fees, costs or other discipline on attorneys who engage in frivolous litigation. 132 *N.J.* at 562–63, 626 *A.*2d 425. The result of that reference was ultimately the Court's adoption of our present *R.* 1:4–8. In its letter opinion concerning the award of fees under the Frivolous Claims Statute, the trial court mistakenly referred to the new *R.* 1:4–8 although that rule became effective only on September 1, 1996, after institution of this suit, and thus had no application here.

Second, if the concern with the entire controversy doctrine is viewed as unreasonable, unjustified or perhaps specious, then those objections and criticisms can properly be leveled at plaintiff's attorney, but not at plaintiff itself. The question is whether plaintiff relied on its attorney; not whether the advice provided by that attorney was sound.

In *McKeown–Brand* the court did not hold that reliance on the advice of counsel will necessarily and in every case prevent recovery under the Frivolous Claims Statute. A client may still be responsible if he or she acts "in bad faith." The concluding language of the court in *McKeown–Brand* is significant and seems applicable here:

Although reliance on the advice of counsel will not insulate a party who acts in bad faith, we cannot find that plaintiff so acted. Perhaps her attorney should have been more careful.... The attorney's failings, however, may not be imputed to the client. Plaintiff's conduct bespeaks an honest attempt to press a perceived, if ill-founded, claim. She disclosed the relevant facts to her attorney and in good faith relied on the attorney's advice. Although misguided, plaintiff did not act in bad faith.

[132 *N.J.* at 563, 626 *A.*2d 425]

■ In sum, plaintiff and its attorney assert that plaintiff acted on the advice of its counsel. So far as appears, defendant has not disputed that proposition nor did the court find to the contrary. However, the court also seems to have found that plaintiff may have acted "in bad faith" and, to use the court's words, in order to "punish" the Board and its individual members.

Neither side has cited or discussed the decision in *McKeown–Brand.* Nor, so far as appears, was it brought to the attention of or argued in front of the trial court. We cannot be certain whether, if the holding of *McKeown–Brand* were in front of the court, and the court considered the "advice of counsel" defense, it might still have found liability under the Frivolous Claims Statute because of "bad faith." For these reasons the award of counsel fees under the Frivolous Claims Statute is vacated and the matter is remanded to the trial court for further consideration (and whatever further proceedings, if any, the trial court may deem necessary) consistent with this opinion and with the holding of

*McKeown–Brand v. Trump Castle Hotel & Casino.* Except as so modified, the decision of the trial court is affirmed.