707 A.2d 180

AETNA LIFE AND CASUALTY CO., AS SUBROGEE OF BAKER COMPANIES, INC., PLAINTIFF–APPELLANT, v. IMET MASON CONTRACTORS AND/OR I & B MASONRY, INC. AND/OR IMET BAJRAMI, J.M.R. CONCRETE OF LONG ISLAND CORP. AND/OR JMR CONSTRUCTION COMPANY, BARNES CHEVROLET, PARDY FARMS SERVICE CENTER AND/OR PARDY FARMS SERVICE STATION, DEFENDANTS, AND FORD MOTOR COMPANY AND SIMON MOTORS AND MACHINE CO., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 9, 1998—Decided March 31, 1998.

Before Judges NEWMAN, COLLESTER and LESEMANN.

*Michael Huber*, argued the cause for appellant (*Freeman, Barton & Huber*, attorneys; *Mr. Huber*, on the brief).

*C. Scott Toomey*, argued the cause for respondent Ford Motor Company (*White & Williams*, attorneys; *Thomas M. Hinchey*, on the brief)

*Kenneth E. Pogash*, argued the cause for defendant–respondent Simon Motors and Machine Company (*Elliot N. Fabricant*, attorney; *Mr. Pogash*, of counsel and on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Plaintiff, Aetna Life and Casualty Company (Aetna), appeals from the orders granting defendants, Ford Motor Company (Ford Motor) and Simon Motors and Machine Co. (Simon Motors), summary judgment, arguing that the motion judge erred by dismissing plaintiff's complaint, on the ground of spoliation of evidence prior to the completion of discovery. We affirm.

Aetna is the insurance carrier for Baker Companies, Inc., who acted as the general contractor for a construction project at Eden Lane Condos in Whippany, New Jersey. On October 23, 1993, a 1986 Ford Econoline van, which was owned by Imet Mason Contractors (Imet) and operated by an employee of JMR Construction Company, caught fire which spread to three condominium units under construction by Baker Companies, Inc. (Baker). The van was sold to Imet by Barnes Chevrolet. As a result of the fire, Aetna paid Baker $99,553.00, the cost to rebuild, repair and reconstruct the damaged units. At the time of the fire, the van was over eight years old and had in excess of 137,000 miles on its odometer. The van had been serviced in the past by both Pardy Farms Service Center and Simon Motors.

An officer from the Whippany Fire Department reported that the fire had originated in the van and that the exact cause of the fire could not be determined due to extensive fire damage. The

officer noted that the "[f]ire from the van had ignited the siding of the Townhouse unit."

State Farm Insurance Company, the insurer of the van, retained Peter Vallas Associates, Inc. (Vallas Associates) to ascertain the cause of the fire. On October 29, 1993, Vallas Associates inspected the van and subsequently issued a report containing the following conclusion:

> Based on the on-scene inspection and reviewed documentation to date, it is the opinion of this investigator that the subject fire occurrence is the result of a fuel line failure within the engine compartment. A fuel hose or related connection failed in the area where the fuel lines connect to the carburetor, possibly due to the overpressurization in the fuel line system. This failure resulted in expulsion of gasoline in the area of the alternator to the open windings which creates many sparks and/or any other sparks that are normally associated with a running vehicle engine. Ignition resulted which, subsequently, caused severe fire conditions that existed.

> Due to the extensive damage to the lines in this area, I was unable to identify the exact location of the failure resulting of the fire occurrence.

The report also noted that there were open recall campaigns covering the van for the power steering linkage and for the fuel line.

Vallas Associates issued a supplemental report, dated February 15, 1994, enumerating the van's available repair and maintenance records, noting that some records were destroyed in the fire. The report included an invoice from Simon Motors for work performed approximately seventeen months prior to the fire involving replacement and rebuilding of the engine which included a pulley, air hose, fuel pump motor mount, radiator hose, associated belts, air filter, starter, transmodulator, breather element, freon and a rebuilt motor. Vallas Associates learned from the manager of Simon Motors that the procedure for reassembling a fuel system to the carburetor is to use the pre-existing hoses, lines, clamps and connections.

In a third report dated July 26, 1994, Vallas Associates noted that "[f]urther review of the recall notification indicates that there was an open recall for a fuel line failure from possible overpressurization." The report further noted that repairs and corrections

concerning the recall notification were not performed. In this report, Vallas Associates concluded:

> Incorporating all the circumstances surrounding this, I would feel that there was a 50/50 chance of one of two scenarios creating the cause of this fire occurrence.

> 1. There was some form of a fuel failure at the connector for the fuel line and it may or may not have involved the recall. One would think that if the recall notice was issued in 1987, surely a problem that the manufacturer recognized would have developed much earlier than October 23, 1993.

> 2. It is possible that the overall design of this carburetor with a needle valve assembly may have resulted in a foreign particle or contaminate causing the needle valve to stick in the open position. There may have also been a failure or defect in this carburetor that caused this particular occurrence, allowing fuel to fill up in the carburetor bowl, overflow and cause the fire conditions that existed.

> It would be reasonable to assume that at least 50% of the damages are the result of some type of a failure that developed or that may even be considered responsible as a result of the recall.

After Vallas Associates' issued its last report, the van was destroyed, although the exact date of destruction is unknown.

Before the van was destroyed, another investigation was conducted by A.C. James Associates (A.C.James) at Aetna's request. A.C. James concluded in a report dated December 13, 1993, that the fire that damaged the condominium units "was caused by an engine fire in the subject 1984 Ford Econoline van which was owned by Imet Bajrami" and that "[t]he van was parked close to the building when the engine caught fire and spread to the structure." The report also noted:

> The fiberglass engine cover was burned away. All rubber hoses surrounding the top of the engine were burned off. Removal of the air filter cover revealed that only slight remains of the charred air filter remained, indicating intense heat temperatures at the top of the engine.

A.C. James also reported that "[a]t the time of our inspection it was discovered that the subject vehicle which caused the fire had been removed by State Farm Insurance Company" and that it "was being stored at Eagle Auto Body" in Parsippany, New Jersey.

Ford Motor asserts that Aetna did not place it on notice regarding this claim until October 6, 1994, when its insurer

received a letter from a subrogation representative at Aetna. That letter read in pertinent part:

> Our investigation reveals that your insured is responsible for this loss.
>
> My insureds building was damaged when a 1986 Ford Econoline Van caught fire. I am enclosing a copy of the recall on that year and I note that there are several recalls that relate to fire hazards.

In a letter dated October 26, 1994, Ford Motor acknowledged Aetna's correspondence and requested that Aetna "take all necessary steps in order to ensure that the subject vehicle and all of its component parts are maintained and preserved for trial." The van was destroyed, however, before Ford Motor had an opportunity to inspect it.

Simon Motors contends that it was not notified of the fire until Aetna, as subrogee of Baker Companies, Inc., filed suit on May 25, 1995. Simon Motors also did not have an opportunity to inspect the van before it was destroyed.

Both Ford Motor and Simon Motors moved for summary judgment. In granting their summary judgment motions, the motion judge was satisfied that Aetna had sufficient control of the van to have it inspected, that the fire was alleged to be caused by a defect in the van, that Aetna had an obligation to insure that the van was retained and that denying Ford Motor and Simon Motors the opportunity to inspect the van prejudiced their defense. As a consequence, the motion judge, describing the situation as "a classic case where the spoliation requires dismissal of the complaint," granted that ultimate relief.

On appeal, Aetna contends that the motion judge committed reversible error by dismissing its complaint on the ground of spoliation of evidence because there was no showing that it had acted willfully or deliberately and because defendants failed to prove that they were substantially prejudiced.

 "Spoliation of evidence in a prospective civil action occurs when evidence pertinent to the action is destroyed, thereby interfering with the action's proper administration and disposition." *Hirsch v. General Motors Corp.*, 266 *N.J.Super.* 222, 234, 628 *A.2d*

1108 (Law Div.1993). A plaintiff who destroys evidence interferes with a defendant's ability to defend a lawsuit and right to discovery. *Id.* at 245, 628 *A.2d* 1108. Where plaintiffs spoliate such evidence, sanctions should be imposed and the nonspoliating defendant may even be entitled to counsel fees. *Ibid.* (quoting Pressler, *Current N.J. Court Rules,* comment on *R.* 4:23–4 (1993)).

A trial court has the "'inherent discretionary power to impose sanctions for failure to make discovery.'" *Hirsch, supra,* 266 *N.J.Super.* at 260, 628 *A.2d* 1108 (quoting *Calabrese v. Trenton State College,* 162 *N.J.Super.* 145, 151–52, 392 *A.2d* 600 (App.Div.1978), *aff'd,* 82 *N.J.* 321, 413 *A.2d* 315 (1980)). Sanctions imposed by a trial court will not be disturbed on appeal if they are just and reasonable under the circumstances. *Id.* at 261, 628 *A.2d* 1108. However, "'[s]ince dismissal with prejudice is the ultimate sanction, it will normally be ordered only when no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party.'" *Id.* at 261, 628 *A.2d* 1108 (quoting *Johnson v. Mountainside Hosp., Respiratory Disease Assocs.,* 199 *N.J.Super.* 114, 119, 488 *A.2d* 1029 (App.Div.1985), *certif. denied,* 122 *N.J.* 188, 584 *A.2d* 248 (1990)). As we said in *Johnson,*

> when a plaintiff has violated a discovery rule or a court order[,] the paramount issue is whether a lesser sanction than dismissal would suffice to erase the prejudice by the non-delinquent party.... If a lesser sanction could erase the prejudice against the non-delinquent party, dismissal of the complaint with prejudice would not be appropriate and would therefore constitute an abuse of discretion.
>
> [199 *N.J.Super.* at 119, 488 *A.2d* 1029.]

The existence of a duty to preserve evidence is a question of law to be determined by the court. *Hirsch, supra,* 266 *N.J.Super.* at 249, 628 *A.2d* 1108 (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* Sec. 37, at 236 (5th ed.1984)). In *Hirsch,* an automobile insurer, State Farm Mutual Automobile Insurance Company (State Farm), a subrogee for insureds, brought an action against a vehicle manufacturer (General Motors) and dealer (Warnock) arising from a fire that severely damaged a 1988 Cadillac. *Id.* at 228–29, 628 *A.2d* 1108. In July of 1990, the

Cadillac's rear brakes were cleaned and adjusted and the air conditioning hose and front brakes were replaced. *Id.* at 230, 628 *A.*2d 1108. In August of 1990, the vehicle caught fire while parked in plaintiff's driveway. *Ibid.* The fire department incident report stated that the fire had originated in the engine compartment, although the ignition factor was undetermined. *Ibid.* State Farm declared the Cadillac a "total loss" and settled with plaintiffs for $17,267.13. *Id.* at 230–31, 628 *A.*2d 1108. In September of 1990, a salvage company took possession of the car. *Ibid.*

In October of 1990, State Farm retained Vallas Associates to inspect the Cadillac. *Id.* at 231, 628 *A.*2d 1108. Vallas Associates concluded that a ruptured brake fluid line caused the fire in the Cadillac's engine compartment. *Ibid.*

The salvage company received title to the Cadillac in November of 1990. The car was then sold and its whereabouts were unknown. *Ibid.*

State Farm contacted defendants General Motors and Warnock in September of 1990 and reported the incident. *Ibid.* There was no further contact between plaintiffs and defendants until April 1991 when State Farm sent a letter to defendants seeking reimbursement for the money it paid to its insureds. *Ibid.* In October of 1991, plaintiffs filed suit. As here, defendants did not have an opportunity to inspect the Cadillac before it was lost or destroyed. Subsequently, a motion to dismiss plaintiffs' claim was filed. *Id.* at 233, 628 *A.*2d 1108.

The Law Division concluded that plaintiffs had a duty to preserve the Cadillac and that they breached that duty, resulting in an interference with the discovery process. The court reasoned:

a duty to preserve evidence, independent from a court order to preserve evidence, arises where there is: (1) pending or probable litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of litigation; (3) foreseeability of harm to the defendants, or in other words, discarding the evidence would be prejudicial to defendants; and (4) evidence relevant to the litigation.

In this case, plaintiffs' discarding of the Cadillac has frustrated any possibility for a Request for Inspection....

First, the October 12, 1990 Vallas Report apprised plaintiffs of probable litigation involving defendants. Second, plaintiffs, upon receipt of the Vallas Report, knew of the likelihood of subsequent litigation. Plaintiffs must exercise due diligence in assessing the report and in deciding whether to seek remuneration from third parties. Third, it is foreseeable that disposal of the Cadillac is harmful to defendants. The Vallas Report supports plaintiffs' case, and defendants were denied the opportunity to examine the Cadillac to determine the validity and viability of the Vallas Report findings, as well as to determine other competing causes of the fire. Failure to preserve the evidence or provide inspection access is prejudicial to defendants. Finally, the Cadillac is central, and thus relevant and material, to this litigation. It is the best evidence to determine whether plaintiffs' claims are truthful to ensure that the results will be accurate. Accordingly, plaintiffs had a duty to preserve the Cadillac, and their precomplaint actions have breached that duty, thereby resulting in interference with the discovery process.

[*Id.* at 250–51, 628 *A.*2d 1108.]

We agree with the *Hirsch* rationale. Applying it to the facts of this case, Aetna had a duty to preserve the Ford van. First, A.C. James, retained by Aetna, inspected the vehicle and apprised Aetna that the fire that damaged the condominium units was caused by a fire in the engine of the van, which was parked close to the building. A.C. James also reported that the van had been removed by State Farm Insurance Company and was being stored at Eagle Auto Body in Parsippany, New Jersey.

Vallas Associates (the same expert utilized in the *Hirsch* case), initially retained by State Farm and subsequently employed as Aetna's expert, issued reports concluding that the fire may have been caused by a fuel line problem, for which the van was under recall, or that there may have been a defect in the carburetor. Vallas Associates also noted that Simon Motors had rebuilt the engine seventeen months prior to the fire which included work on the fuel system. Based on these reports, it would be reasonable to conclude, as the court did in *Hirsch*, that Aetna knew of the likelihood of subsequent litigation.

Additionally, it was foreseeable that disposal of the van would be prejudicial to defendants. As similarly noted by the *Hirsch* court, defendants were denied the opportunity to inspect the van and determine the validity and viability of the reports prepared by A.C. James and Vallas Associates. *See Ibid.*

Finally, as in *Hirsch,* the van "is central, and thus relevant and material, to this litigation. It is the best evidence to ... ensure that the results will be accurate." *Id.* at 251, 628 *A.*2d 1108. Accordingly, as in *Hirsch,* Aetna had a duty to preserve the van and they have breached that duty by not preserving the van for inspection by defendants, thereby substantially and irreparably interfering with the discovery process. *See ibid. But see Allis-Chalmers Corp. Product Liability Trust v. Liberty Mut. Ins. Co.,* 305 *N.J.Super.* 550, 702 *A.*2d 1336 (App.Div.1997) (finding employer's workers' compensation insurer did not have affirmative duty to obtain ownership and control of forklift for benefit of forklift manufacturer's defense in wrongful death action brought by employee's widow). Thus, Aetna's claim that "there has not even been a showing that [it] owed a duty to preserve the van, as it did not own or control the subject van," is without merit.

▮ Plaintiff's contention that the trial court should not have dismissed its complaint because there is no proof that it had acted willfully or in bad faith is likewise without merit. As noted by the *Hirsch* court, "[t]he spoliator's level of intent, whether negligent or intentional, does not affect the spoliator's liability. Rather, it is a factor to be considered when determining the appropriate remedy for the spoliation." 266 *N.J.Super.* at 256, 628 *A.*2d 1108. Furthermore, "the spoliating party's state of mind is not essential to determine the proper sanction to be imposed because a 'lesser sanction than dismissal would suffice to erase the prejudice suffered by' defendants." *Id.* at 265, 628 *A.*2d 1108 (quoting *Johnson, supra,* 199 *N.J.Super.* at 119, 488 *A.*2d 1029).

▮ As the motion judge commented, the prejudice to defendants was apparent. From Ford Motor's perspective, the loss from the inability to inspect was irretrievable. The van had travelled 137,000 miles and the engine was rebuilt seventeen months before the fire. Under these circumstances, the need for actual examination was essential. Photographs of the engine would not be an adequate substitute for personal observation of the intricate parts of an automobile engine. This is no less true

for Simon Motors, who did not even learn of the fire until it was served with plaintiff's complaint. Visual observation of the fire damage was critical in order to assess whether its work in rebuilding the engine could have led to any risk of fire.

Although the motion judge properly determined that Aetna had a duty to preserve the van, it does not necessarily follow that he should have resorted to imposing the ultimate sanction of dismissal based on spoilation of evidence. The court in *Hirsch* denied defendants' motion to dismiss plaintiffs' complaint and held that "th[e] case dictate[s] preclusion of all evidence regarding plaintiffs' inspection of the Cadillac for purposes of trial and summary judgment." 266 *N.J.Super.* at 267, 628 *A.*2d 1108. The court stated:

> In this case, preclusion of the evidence punishes plaintiffs for their discovery violation and deters future discovery violations. Preclusion of the Vallas Report and any testimony as to the findings and conclusions in that report fully rectifies the prejudice suffered by defendants. Precluding any and all evidence of plaintiffs' inspection places the parties in equipoise. Also, preclusion of the evidence deters future discovery violations because it frustrates a spoliator's efforts to gain an advantage. Accordingly, preclusion of the evidence is the proper sanction, and dismissal of plaintiffs' complaint would amount to an abuse of discretion.
>
> [*Id.* at 266, 628 *A.*2d 1108.]

Based on the actual disposition in *Hirsch*, we were originally inclined to grant similar relief here, namely, barring Aetna's experts from testifying based on their inspection of the Ford van which was not retained by Aetna. We inquired of Aetna's counsel if that result would allow him to go forward with the case. Counsel represented to us that he had no proofs, absent expert testimony. In view of counsel's candid response, we see no point in ordering a futile remand. However, we impress upon courts that confront spoilation of evidence in future cases that the ultimate sanction of dismissal should be a remedy of last resort. Here, the preclusion of expert testimony based on inspections of the Ford van would have been an appropriate sanction under the circumstances. As that would just as surely have resulted in

dismissal of Aetna's complaint, we affirm the order of dismissal under review.

Affirmed.