938 A.2d 962 (2008)
397 N.J. Super. 614
SHORE ORTHOPAEDIC GROUP, LLC, Plaintiff-Appellant/Cross-Respondent
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant-Respondent/Cross-Appellant, and
EQ Financial Consultants, Inc., Alexander Borsuk, Louis Farkas and the John F. Krahnert Agency, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2007.
Decided January 24, 2008.
*964 Mark E. Duckstein, Newark, argued the cause for appellant/cross-respondent (Sills Cummis Epstein & Gross, attorneys; Mr. Duckstein, of counsel and on the brief).
Kim Kocher, argued the cause for respondent/cross-appellant (White and Williams, attorneys, Philadelphia, PA; Jeanne O. Marino, Hackensack, of counsel; Ms. Marino and Ms. Kocher, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and C.S. FISHER.
The opinion of the court was delivered by
STERN, P.J.A.D.
Following the entry of final judgment, plaintiff Shore Orthopaedic Group ("Shore") appeals from an order of April 1, 2005, denying its application for counsel fees under Rule 4:42-9(a)(6), or, alternatively, "pursuant to the Frivolous Litigation statute," N.J.S.A. 2A:15-59.1. Judge Robert O'Hagan rejected defendant insurer's disclaimer and effort to rescind its "Business Overhead Expense" disability policy issued to Shore as owner, with respect to Dr. Michael Absatz, as insured, and granted summary judgment on coverage to Shore, for which there is no cross-appeal.[1] The judge also denied Shore's *965 post-judgment motion for counsel fees, concluding this was neither a "first party" action nor a frivolous claim. However, by order of June 30, 2005, the judge awarded Shore $50,000 as a sanction for a discovery violation, from which defendant ("Equitable") cross-appeals.
Plaintiff asserts that Rule 4:42-9(a)(6) applies because this case dealt with a third party claim on "a liability or indemnity policy of insurance," and N.J.S.A. 2A:15-59.1 applies because Equitable "knew or should have known that its counterclaims were meritless," and that it is therefore entitled to counsel fees. On its cross-appeal from that part of the April 1, 2005 and June 30, 2005 orders awarding $50,000 in fees and costs as a sanction, Equitable asserts that Shore had "already [been] compensated for all of the fees and costs incurred as a result of the delay" and the discovery motion for which it had been awarded $3,000 in fees and costs.[2] Equitable also claims that there was no rational basis for the award nor "scruti[ny]" of the fee application which included time for the discovery motion which had already been the subject of an award and conferences by attorneys in the plaintiff's firm who duplicated review of the same material.
We affirm the judgment in all respects.

I.
On November 7, 1994, Shore, an orthopedic group of practitioners, applied for a Disability Overhead Expense policy with defendant insurer for coverage in the event that its associate Dr. Michael Absatz became disabled and was unable to pay his share of the overhead expenses of the group. Plaintiff was the owner of the policy and paid all of the premiums, although Dr. Absatz was the "insured." The policy provided that all benefits would be paid directly to Shore as "the owner."
In November 1994, Shore made an initial premium payment in order to obtain "conditional receipt" coverage pending review of the application and the carrier's determination that Absatz was "a standard insurable risk." The application stated:
If at least a minimum deposit is made, we will insure the Proposed Insured if s/he is a standard insurable risk on the effective date. The insurance provided will:
i) take effect as of the effective date;
ii) be exactly as requested for individual coverage in the application; and
iii) continue until we notify you that the application is accepted, modified or filed, but in no event longer than 60 days from the effective date.
On December 12, 1994, Equitable's underwriting department issued a memorandum to its agent requesting a recheck of Dr. Absatz's blood pressure. It was known he was under treatment for a dental *966 condition called acute necrotizing ulcerative gingivitis and had high blood pressure. The application was deemed "incomplete" until the recheck of Dr. Absatz's blood pressure. On January 23, 1995, Equitable sent a letter to Dr. Absatz stating that the file was deemed "incomplete" and that he would need to contact the sales representative to resolve the issues before a policy could be issued. Shore's original premium check was returned to defendant's agent who then returned it to Equitable with the new blood pressure readings.
On February 14, 1995, Dr. Absatz submitted new blood pressure readings as a result of which it was determined that he was a standard underwriting risk. Equitable asserted that the underwriting department received the new readings on February 27, 1995, and its in-house medical consultant reviewed them on March 7, 1995.
On March 4, 1995, Dr. Absatz had a biopsy performed on the area of his mouth afflicted with the gingivitis. On March 10, 1995, Dr. Absatz was diagnosed with palate cancer, but Equitable was not so advised.
On April 21, 1995, Equitable issued the policy naming Dr. Absatz as insured. The policy was dated April 7, 1995. Upon receipt, Dr. Absatz acknowledged both a "Policy Issue Information Sheet" and "Amendment to Application."
On July 22, 1998, "due to the progression of [a] neurologic deficit cause[d] by [the] radiation" for his "recurrent squamous cell cancer," Dr. Absatz's medical condition rendered him totally disabled to perform orthopedic surgery. As a result, Shore submitted a claim for benefits under the policy.
Equitable denied the claim, informing Shore by letter, dated January 19, 1999, that Dr. Absatz did not disclose the diagnosis of cancer which was made during the application process and before the policy was issued. According to Equitable's claims representative, had it known of the condition, the policy would never have been issued, and it was being "rescind[ed]." Shore and Absatz contested the disclaimer, by letter from counsel dated April 15, 1999, which stated, among other things, that because the Conditional Receipt policy was purchased in November 1994, and Absatz had met the standard underwriting criteria on February 14, 1995, discovery of the oral cancer in March 1995 did not need to be reported. Shore's complaint, seeking the policy benefits, was filed on May 25, 2001. In that context the impact of Equitable's policies and procedure relating to conditional receipt coverage became important.
Starting in August 2001, Shore unsuccessfully requested that Equitable produce its underwriting manual and all other manuals in force at the time that the conditional receipt and policy were issued. After three years of unsuccessfully endeavoring to obtain this discovery, two of Equitable's sales agents testified in depositions that defendant did, in fact, have extensive libraries of manuals which revealed that its responses to plaintiff's requests for production were not accurate.
Shore thereafter continued unsuccessfully in its attempts to obtain production of the underwriting manuals. Finally, on July 16, 2004, plaintiff filed a motion to compel production of the manuals. On July 20, 2004, defendant produced materials indicating the existence of the relevant underwriting manual, and on August 13, 2004, Judge O'Hagan ordered defendant to provide the underwriting manual and other discovery. He also indicated he would award plaintiff attorney fees for having to pursue the discovery and filing of the motion. *967 Shore subsequently submitted a fee application in the amount of $4,952.50.
Thereafter, on cross motions for summary judgment, Judge O'Hagan concluded that, particularly because the original premium was not returned to Shore, the policy became effective on February 14, 1995. He therefore entered judgment for Shore. As previously noted, Judge O'Hagan also awarded plaintiff $3,000 in connection with the motion which resulted in the production of the manuals.
On or about March 1, 2005, plaintiff filed its motion for attorney fees and costs. It asserted entitlement to counsel fees pursuant to Rule 4:42-9(a)(6) and N.J.S.A. 2A:15-59.1 because defendant "knew or should have known from the outset of this litigation that its counterclaim seeking to rescind the policy was frivolous because its asserted basis for its attempted rescission were contrary to the Equitable's internal written underwriting guidelines." It also argued that there was "no legitimate basis for denying the claim" and failing to produce documents defendant had, and that if Equitable had "produced the manual in a timely manner, Shore Orthopaedic would have moved much earlier for summary judgment."
In awarding $50,000 to plaintiff as a discovery sanction against defendant, Judge O'Hagan stated:
I believe this insurance company knew all along of the existence of this form, this manual as [how] to handle these matters, but just didn't, but just was intentionally obfuscating the area. In fact, there was indeed affirmative misstatements that no such manual exists or we're not aware of any such manual or things of that nature, when as a matter of fact it did exist. . . . And in fact, sure enough, it did surface.
Now, as to the discovery aspect of this, when that first came to light I awarded fees as it concerned that round of motion practice. I think the transgression went so much beyond that on the part of the Equitable. . . . They didn't partake in the discovery process in good faith as far as I'm concerned. I think we're not talking about a frivolous litigation situation. I think it maybe should have been recognized early on by [defendant] in their defense that this manual basically required that judgment be entered in favor of plaintiff.
But I think they violated their discovery obligations in such a[n] obvious and such an improper way that merely assessing sanctions for the immediate motion then under consideration is inadequate, inappropriate and I think not fair to the plaintiff. Plaintiff never should have had to undergo all of these expenses.
Thus, in his June 30, 2005 order,[3] the judge awarded fees for the period from the date of the first discovery request for the relevant manual through the motion for summary judgment, "less fees incurred for drafting" the summary judgment motion and the fees already awarded and received "in accordance with" the April 1, 2005 order for the discovery motion. Plaintiff thereafter submitted a request totaling $65,263.05 in fees and costs. Defendant opposed the request, arguing that it contained duplicate services for which Shore already received a recovery, and was excessive irrespective of the discovery delay because plaintiff would have had the same expenses.
In entering the June 30, 2005 order awarding plaintiff $50,000 representing what he believed was "fair and reasonable attorneys' fees and expenses incurred by *968 Shore Orthopaedic," Judge O'Hagan reasoned:
From [the] Court's perspective some of [the] services rendered could have been performed by lower level employees or attorneys. However, defendant's actions in denying existence of documents and thereafter in delaying production of same unduly and unfairly protracted resolution of this matter. Had the documents been produced when requested there may have been a request for fees, however that issue would not have been as complicated as Equitable Life caused here.

II.
The decision to award counsel fees rests "within the sound discretion of the trial court." Maudsley v. State, 357 N.J.Super. 560, 590, 816 A.2d 189 (App. Div.2003). See also Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44, 771 A.2d 1194 (2001) (attorney's fee determination by trial courts is disturbed only upon a clear abuse of discretion); Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995) ("fee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion"); Iafelice v. Arpino, 319 N.J.Super. 581, 590, 726 A.2d 275 (App.Div.1999) ("broad discretion" to award fees under R. 4:42-9 when authorized to grant them); Mandel v. UBS/PaineWebber, 373 N.J.Super. 55, 83-84, 860 A.2d 945 (App.Div.2004), certif. denied, 183 N.J. 213, 871 A.2d 91 (2005) (discretion to deny award of counsel fees under frivolous lawsuit statute). However, absent agreement of the parties, there must be a basis in the court rules or a statute in order for the trial court to exercise its discretion, In re Niles, 176 N.J. 282, 293-95, 823 A.2d 1 (2003); Satellite Gateway Commc'ns v. Musi Dining Car Co., 110 N.J. 280, 285, 540 A.2d 1267 (1988), and that is a question of law. In this case there is no basis for the grant of attorney's fees under Rule 4:42-9 or the statute.

A.
Plaintiff contends that it is entitled to recover its counsel fees pursuant to Rule 4:49-9(a)(6). However, Rule 4:42-9(a)(6) does not pertain to first party claims, and Judge O'Hagan properly rejected plaintiff's claim.
Pursuant to the "American Rule," adhered to by our Supreme Court, the prevailing party is ordinarily not entitled to collect counsel fees from the losing party. In re Niles, supra, 176 N.J. at 294, 823 A.2d 1. See Pressler, Current N.J. Court Rules, comment 1 on R. 4:42-9 (Gann 2008) ("the New Jersey Supreme Court has remained committed to the so-called American rule, that is, that the parties bear their own counsel fees"). The Court reiterated that "the purposes behind the American Rule are threefold: (1) unrestricted access to the courts for all persons; (2) ensuring equity by not penalizing persons for exercising their right to litigate a dispute, even if they should lose; and (3) administrative convenience." In re Niles, supra, 176 N.J. at 294, 823 A.2d 1 (citing In re Estate of Lash, 169 N.J. 20, 43, 776 A.2d 765 (2001) (Verniero & LaVecchia, JJ., dissenting)).
The Supreme Court, as an exception to the American rule, has authorized trial courts to award reasonable attorney fees in limited circumstances when specifically permitted to do so by rule or statute. Id. at 294-95, 823 A.2d 1; Rendine, supra, 141 N.J. at 322, 661 A.2d 1202; Gateway, supra, 110 N.J. at 284, 540 A.2d 1267. One such exception can be found in Rule 4:42-9(a)(6), which permits an award "[i]n *969 an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." R. 4:42-9(a)(6). Thus, the rule has been limited to "third party" claims as a matter of policy.
A "first-party" claim against an insurance company is "a suit by an insured against his insurance company because of its failure to settle his claim . . . as opposed to a suit based on the insurer's failure to settle a third party tort claim for a reasonable sum." Pickett v. Lloyd's (A Syndicate of Underwriting Members), 131 N.J. 457, 466, 621 A.2d 445 (1993) (quoting Indus. Fire & Casualty Ins. Co. v. Romer, 432 So.2d 66, 69 (Fla.Dist.Ct.App.1983) (Hurley, J., concurring)). A third party has no direct relationship with the carrier and looks to it for recovery for injury caused by its insured. See Pressler, Current N.J. Court Rules, comment 2.6 on R. 4:42-9(6) (Gann 2008).
Because the intention of the Rule "is intended to permit an award of counsel fees only where an insurer refused to indemnify or defend in respect of its insured's third-party liability to another, it has not been extended beyond its express terms in order to authorize a fee award to an insured who brings direct suit against his insurer to enforce casualty or other direct coverage, including UM/UIM coverage." Pressler, Current N.J. Court Rules, comment 2.6 on R. 4:42-9(a)(6) (Gann 2008). See also Enright v. Lubow, 215 N.J.Super. 306, 311-12, 521 A.2d 1300 (App.Div.), certif. denied, 108 N.J. 193, 528 A.2d 19 (1987) (holding R. 4:42-9(a)(6) to be inapplicable to direct actions brought by the insured against the carrier to enforce coverage); Giri v. Medical Inter-Ins. Exchange of N.J., 251 N.J.Super. 148, 151, 597 A.2d 561 (App.Div.1991) (observing that rule applies where "`an insurer refuses to indemnify or defend its insured's third-party liability to another' and does not authorize an award of counsel fees to an insured `on a direct suit against the insurer to enforce a casualty or other first-party direct coverage'") (quoting Guarantee Ins. Co. v. Saltman, 217 N.J.Super. 604, 610-11, 526 A.2d 731 (App. Div.1987)).
Shore insists that Rule 4:42-9(a)(6) applies here because it was a "third-party" and it filed a "third-party" claim because Dr. Absatz was the insured. We also recognize that plaintiff could have sued Dr. Absatz for expenses and that he would have sought a defense or indemnification from the insurer. However, Shore purchased the insurance, paid the premiums, owned the policy and was the beneficiary to be protected when and if Dr. Absatz became disabled and unable to make his share of the expenses of the insured medical group. Hence, Judge O'Hagan correctly found that plaintiff filed a first party claim and the Rule does not authorize an award of counsel fees.

B.
Shore also contends that it was entitled to recover its legal fees pursuant to N.J.S.A. 2A:15-59.1, the frivolous litigation statute. See also R. 4:42-9(a)(8) (allowing fees where "permitted by statute"). However, the judge did not abuse his discretion in finding that the defense was not "frivolous" and declining to award fees pursuant to N.J.S.A. 2A:15-59.1.
N.J.S.A. 2A:15-59.1(a), the frivolous litigation statute, provides that reasonable litigation costs and counsel fees may be awarded to the prevailing party "if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the non-prevailing person was frivolous." Pursuant to N.J.S.A. 2A:15-59.1(b):

*970 In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
Since its enactment in 1988, the statute has been recognized as serving a dual purpose. Toll Bros., Inc. v. Township of W. Windsor, 190 N.J. 61, 67, 918 A.2d 595 (2007).[4] On the one hand, "the statute serves a punitive purpose, seeking to deter frivolous litigation." Deutch & Shur, P.C. v. Roth, 284 N.J.Super. 133, 141, 663 A.2d 1373 (Law Div.1995). On the other hand, the statute serves a compensatory purpose, seeking to reimburse "the party that has been victimized by the party bringing the frivolous litigation." Ibid.
Thus, a pleading, case or defense can be deemed "frivolous" if it "was filed in bad faith solely for the purpose of harassment, delay or malicious injury," or filed "without any reasonable basis in law." Lake Lenore Estates, Assocs. v. Twp. of Parsippany-Troy Hills Bd. of Educ., 312 N.J.Super. 409, 424, 712 A.2d 200 (App. Div.1998) (internal citations omitted). A claim will then be found to be "frivolous" only if it "was commenced or maintained in bad faith" or the action "was without any reasonable basis in law or equity and could not be supported by a good faith argument for extension, modification or reversal of existing law." Savona v. Di Giorgio Corp., 360 N.J.Super. 55, 62, 821 A.2d 518 (App.Div.2003) (citations omitted). In the context of a claim of bad faith for an insurance company's failure to pay a valid claim, our Supreme Court has stated:
To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. . . . [I]mplicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless . . . indifference to facts or to proofs submitted by the insured.
[Pickett, supra, 131 N.J. at 473, 621 A.2d 445.]
Neither will false allegations of fact "justify a fee award unless they are made in bad faith, for the purpose of harassment, delay, or malicious injury." Belfer v. Merling, 322 N.J.Super. 124, 144, 730 A.2d 434 (App.Div.), certif. denied, 162 N.J. 196, 743 A.2d 848 (1999). Thus, the term "frivolous," as used in N.J.S.A. 2A:15-59.1, has been "given a restrictive interpretation." Ibid.; see also McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561, 626 A.2d 425 (1993); Savona, supra, 360 N.J.Super. at 60-61, 821 A.2d 518.
*971 In rejecting plaintiff's statutory claim, Judge O'Hagan said:
I think we're not talking about a frivolous litigation situation. I think it maybe should have been recognized early on by [] Equitable Life . . . in their defense that this manual basically required that judgment be entered in favor of plaintiff.
The judge thus did not find that defendant's actions in declining the claim and defending the action showed intentional bad faith, harassment or malicious injury. The doctor's medical condition and its timing in connection with issuance of the policy warranted examination of the claim, and we have no basis on which to disturb Judge O'Hagan's ruling given our public policy concerning the costs of litigation. To the extent bad faith or improper motives were involved once discovery requests were made and denied, the sanctions imposed properly addressed the matter and provided a deterrence. Even if the sanctions do not come within the express wording of Rule 1:2-4, or the discovery rules including Rule 4:23-2, they certainly come within the spirit, and inherent authority of the court. See Abtrax Pharm., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 512, 655 A.2d 1368 (1995); Manorcare Health Services, Inc. v. Osmose Wood Preserving Inc., 336 N.J.Super. 218, 230, 764 A.2d 475 (App.Div.2001); Summit Trust Co. v. Baxt, 333 N.J.Super. 439, 450, 755 A.2d 1214 (App.Div.), certif. denied, 165 N.J. 678, 762 A.2d 658 (2000); Aetna Life & Casualty Co. v. Imet Mason Contractors, 309 N.J.Super. 358, 365, 707 A.2d 180 (App.Div.1998). On the other hand, the authority to impose a sanction is limited to reimbursement of a party's counsel fees and expenses "that would have been avoided by disclosure" of the discovery. Pressler, Current N.J. Court Rules, comment 2.2.1 to R. 4:5-1 (Gann 2008). See also Wolfe v. Malberg, 334 N.J.Super. 630, 637-38, 760 A.2d 812 (App.Div.2000); Oliviero v. Porter Hayden Co., 241 N.J.Super. 381, 387, 575 A.2d 50 (App.Div.1990). Judge O'Hagan so limited the sanction, and it is upheld substantially for the reasons he gave. See Abtrax, supra, 139 N.J. at 511, 517-22, 655 A.2d 1368 (scope of review; upholding dismissal of complaint and imposition of counsel fees and expenses as sanction).

III.
Equitable contends on its cross-appeal that: 1) the trial court failed to scrutinize the fee demand; 2) the award includes fees not subject to reimbursement; and 3) the award includes unreasonable and excessive fees. Hence, defendant asks us to vacate or reduce the $50,000 award.
As we have already noted, the judge recognized the limitations imposed on his inherent authority to award discovery sanctions, and "[s]anctions imposed by a trial court will not be disturbed on appeal if they are just and reasonable under the circumstances," Aetna Life & Casualty Co., supra, 309 N.J.Super. at 365, 707 A.2d 180; see also Manorcare Health Services, Inc., supra, 336 N.J.Super. at 230, 764 A.2d 475. For purposes of its cross-appeal, Equitable does not now dispute Judge O'Hagan's inherent authority to award counsel fees for discovery violations. Rather it argues the amount of fees were unreasonably high. We reject the contention.
Judge O'Hagan awarded fees only for the period of time after plaintiff requested the manual, and he deducted the fees already awarded, $3,000 on the discovery motion itself as well as the fees related to the summary judgment motion, reasoning that Shore would have filed the summary judgment motion regardless of the discovery violations and when it formed the basis for doing so. Moreover, as previously discussed, *972 the judge reviewed the application carefully and awarded only a portion of the requested fees, and the judge properly "calculated [the fees and costs] from the point when compliance [with discovery requirements] was practicable." Cf. Toll Bros., supra, 190 N.J. at 73, 918 A.2d 595 (regarding fees and costs for "frivolous litigation"). Furthermore, because the judge specifically excluded the earlier award of $3,000 from the total plaintiff requested, there was no duplicate award. The discovery violation resulted in collateral costs which warranted the sanction, and we can find no abuse of discretion in the $50,000 award.

IV.
The orders under review are affirmed.
NOTES
[1] The order requiring defendant insurer to pay "the amount provided by the policy," was entered on October 8, 2004, and Equitable paid the policy limits plus prejudgment interest. Although not in the record, we are told that the complaint was dismissed on December 27, 2004, pursuant to a stipulation of dismissal with prejudice except for the issues before us which were preserved for appeal. Irrespective of whether the matter became final that day or when the counsel fees issues were resolved by the order of April 1, 2005, or June 30, 2005 (see Shimm v. Toys From The Attic, 375 N.J.Super. 300, 867 A.2d 1204 (App. Div.2005)), Equitable filed no appeal or cross-appeal from the underlying determination and does not challenge the determination of coverage.
[2] In his order of August 13, 2004, granting discovery, Judge O'Hagan "awarded" "cost[s] and attorney's fees" to be submitted "pursuant to R. 4:23-1(c)." By order dated October 15, 2004, Equitable was required to "reimburse plaintiff, Shore Orthopedic Group[,] in the sum of $3,000 for its counsel fees and costs related to the motion filed and, thereafter, argued on August 13, 2004."
[3] This order was not included in plaintiff's appendix but was submitted by defendant.
[4] In light of our agreement with the trial judge that the defendant's position could not be deemed "frivolous" within the meaning of the statute, we need not address, or remand for the Law Division to initially decide, if plaintiff complied with the "safe harbor" provisions of Rule 1:4-8 "to the extent practicable" and "as soon as practicable." Toll Bros., Inc., supra, 190 N.J. at 65, 71-73, 918 A.2d 595.