972 A.2d 381

SHORE ORTHOPAEDIC GROUP, LLC, PLAINTIFF–APPELLANT, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, DEFENDANT–RESPONDENT, AND EQ FINANCIAL CONSULTANTS, INC., ALEXANDER BORSUK, LOUIS FARKAS, AND JOHN F. KRAHNERT AGENCY, DEFENDANTS.

Argued February 3, 2009—Decided June 22, 2009.

As Corrected July 20, 2009.

*Mark E. Duckstein,* argued the cause for appellant (*Sills Cummis & Gross,* attorneys).

*Kim Kocher,* argued the cause for respondent (*White and Williams,* attorneys).

PER CURIAM.

We granted certification to review only the limited question of whether the insurance coverage involved in this dispute was, for purposes of considering an award of counsel fees under *R.* 4:42–9(a)(6), a first-party or third-party policy. 195 *N.J.* 523, 950 *A.*2d 909 (2008). We now affirm the judgment of the Appellate Division substantially for the reasons expressed by Judge Stern in the opinion below.

JUSTICE LaVECCHIA, dissenting.

With due respect to my colleagues in the majority, I must respectfully dissent. I cannot agree with the application given to *Rule* 4:42–9(a)(6) in this matter. The Rule provides one of the enumerated exceptions that this Court has carved out to the so-called "American rule," which requires litigating parties to bear their own counsel fees. Under *Rule* 4:42–9(a)(6), an award of counsel fees may be allowed "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." At bottom, this appeal is about the scope of that language.

## I.

Petitioner, Shore Orthopaedic Group, LLC (Shore), was a medical practice consisting of three doctors. Each doctor owned a one-third interest in the practice, and overhead expenses were split equally among the three. In late 1994, the doctors decided to purchase business overhead insurance so that if any of them became disabled and could not work, his share of the overhead expenses would be paid to the practice during the time of disability. The doctors also decided to purchase individual disability income insurance to provide income replacement to each doctor personally in the event of disability. At issue in this case is one of the business overhead expense policies purchased from defendant, The Equitable Life Assurance Society (Equitable).

That overhead expense policy was issued to Dr. Michael G. Absatz as "insured" and it listed Shore as "owner." It provided a maximum monthly expense benefit of $25,000 with a maximum benefit period of fifteen months. According to the "Definitions" section of the policy, the terms "You" and "Your" refer to the insured named in the Policy Schedule. The policy explains: "We will periodically pay a Total Disability benefit during Your continuous Total Disability. The amount We will pay is equal to the Covered Monthly Expense You actually incur, while totally disabled." Thus, the policy promised to cover Dr. Absatz's overhead expenses in the event he became disabled and liable for his share of the expenses. The manner in which Equitable would cover those expenses, however, was not through payment to Dr. Absatz. Rather, the policy provided that "[a]ll benefits will be paid to the Owner." At the same time, the policy notes, "if any benefit is payable to Your estate or if You are not competent to give a valid release, We can pay up to $1,000 to one of Your relatives who We believe is entitled to it."

This matter began when, several years after the purchase of the business overhead policy, Dr. Absatz became disabled and Equitable refused to provide benefits. In response, Shore, on behalf of Dr. Absatz as the named insured, filed a complaint seeking the payment of benefits on the policy from Equitable. For three years, Equitable failed to produce requested underwriting manu-

als and Shore was forced to continue the litigation. When, on court order, Equitable finally produced the relevant underwriting manual, the trial court granted summary judgment to Shore and imposed a $50,000 discovery sanction against Equitable. The trial court refused, however, to permit the award of fees to Shore as a successful claimant under *Rule* 4:42–9(a)(6). That left Shore to bear the cost of the approximately $65,000 it took to win a judgment in the trial court requiring Equitable to fulfill its contractual obligations.

In my view, the experience of Shore, in seeking to vindicate the policy indemnifying Dr. Absatz against liability to the partnership for his overhead expenses, falls squarely within the parameters of our Rule permitting an award of attorney's fees to a successful claimant on a "liability or indemnity policy" who has been forced to bring legal action against his or her insurer. *R.* 4:42–9(a)(6). The Rule is intended " 'to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection.' " *Sears Mortgage Corp. v. Rose,* 134 *N.J.* 326, 356, 634 *A.*2d 74 (1993) (quoting *Guarantee Ins. Co. v. Saltman,* 217 *N.J.Super.* 604, 610, 526 *A.*2d 731 (App.Div.1987)). Accordingly, the Rule expressly provides that an award of counsel fees may be allowed "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." *R.* 4:42–9(a)(6).

The majority adopts the Appellate Division's holding that Shore's claim does not qualify for an award of fees under the Rule because Shore was both the owner and the beneficiary of the insurance policy.[1] In my view, the shorthand interpretation of the

---

[1] The panel determined that Shore's claim was not a "third-party claim" for purposes of fee-shifting under the Rule because Shore "purchased the insurance, paid the premiums, owned the policy and was the beneficiary to be protected when and if Dr. Absatz became disabled and unable to make his share of the expenses of the insured medical group." *Shore Orthopaedic Group v. Equitable Life Assurance Soc'y,* 397 *N.J.Super.* 614, 626, 938 *A.*2d 962 (App.Div.2008). That logic results, in my view, in a mischaracterization of the relationship of these parties under the policy. The insured remained Dr. Absatz. The policy paid benefits to Shore Orthopaedic, a third party, when the policy's terms triggered payment. The triggering event occurred when Dr. Absatz became

Rule's intended purpose as that of permitting fees in cases involving "third party" claims as opposed to "first party" claims does not do justice to the analysis that should take place in this matter. Indeed, in my view it was due to the improvident characterization of this action as a "first-party claim" that an erroneous conclusion was reached on the entitlement to fees under the Rule.

## II.

As Appleman's treatise on insurance explains, "[l]iability insurance is customarily described and classified as third-party insurance because the liability insurer's duty to pay runs not directly to the *insured* but directly (on the insured's behalf) to a third-party claimant who is injured by the insured's conduct." 1 *Appleman on Insurance* 2d § 3.3, at 349 (1996). In other words, in order to ascertain whether a policy is a "third-party" policy, it is necessary to answer three inquiries: (1) who is insured by the policy; (2) who is injured by the conduct being insured-against; and (3) does the insurer's duty to pay run to the insured or to the injured party? Thus, the dispositive question in making a first—versus third-party determination cannot simply be *who* was receiving the policy benefits. Rather, the relevant and meaningful query is *why* that party was receiving the policy benefits.

In the case before us, Dr. Absatz was insured by Equitable on a policy that created a duty to pay running from Equitable to Shore. Although, in this case, Shore would be injured by Dr. Absatz's disability rather than by his conduct, the governing principle remains the same. The insurance or guarantee was given to Dr.

---

disabled *and* unable to satisfy his share of overhead expenses. That renders Shore's demand for payment of benefits quintessentially a third-party claim. In my view, the reasoning of the panel, and now the majority, is derailed by its reliance on how payment for the policy was accomplished. Shore may have forwarded the payments to Equitable, but the cost of those payments was deducted as an expense to Dr. Absatz. He ultimately was financially responsible for the cost of the policy. At its core, this policy was paid for by Dr. Absatz and, in turn, paid benefits to a third party, namely Shore.

Absatz in the event he became disabled and could not cover his share of the overhead expenses. The recipient of the benefits, should Dr. Absatz become disabled, was not the doctor himself, but Shore. The Equitable policy, thus, is not a casualty policy or some other type of direct coverage; Shore is the third-party claimant under an indemnity policy between Equitable and Dr. Absatz.

Behind the language of the policy, it is also clear that the primary interest protected by the policy is Dr. Absatz's interest in not being liable to his partners for the overhead expenses of their joint practice should he become disabled. For this reason as well, the policy is properly classified as a third-party policy for the purposes of *Rule* 4:42–9(a)(6). The policy explicitly refers to Dr. Absatz's own expenses and promises to pay them in the event of his disability. While Shore undoubtedly has an interest in receiving its overhead payments. Shore could recover those payments directly from Dr. Absatz in the absence of the Equitable policy. The policy, thus, enables Dr. Absatz to avoid liability to Shore for overhead expenses. it does not "indemnify[ ] [Shore's] direct loss" as would be the case if this were a first-party policy. *Appleman, supra,* § 3.2, at 342. Instead, the policy "essentially reimburses its insured for any liability it may have to the third party by paying the third party on the insured's behalf." *Appleman, supra,* § 3.3, at 349.

## III.

This conclusion is consistent with precedent interpreting *Rule* 4:42–9(a)(6). In interpreting the Rule, we have focused on the interests protected in the insurance contract. For example, we held that a title insurance policy qualified as a "contract of indemnity" for purposes of *Rule* 4:42–9(a)(6). *Sears Mortgage, supra,* 134 *N.J.* at 354–55, 634 *A.*2d 74 (internal quotation omitted). In so doing, we looked to the interests protected by the insurance, reasoning that the title insurance purchaser's claim was "based not on direct loss, but rather on his liability to a third

party, namely [the mortgage company that held the mortgage on the property he had contracted to buy]." *Id.* at 355, 634 *A.*2d 74. We differentiated title insurance policies from "direct-action cases" where counsel fees had been denied under *Rule* 4:42–9(a)(6), noting that those cases "typically involve an insured seeking to recover from his or her insurer for damage resulting from losses caused by theft, fire . . . and the like." *Ibid.* And, although the owner of the title insurance was both the insured and the person bringing the action against the title insurance company, we found that "[t]he action is not a direct claim against the insurer, but a claim for indemnification under an insurance policy, and thus falls squarely within the provisions of *Rule* 4:42–9(a)(6)." *Ibid.*

A similar analysis led this Court to reach the opposite conclusion when asked whether the owner of a surety bond who is forced to litigate may qualify for attorney's fees under the Rule. *Eagle Fire Prot. Corp. v. First Indem. of Am.,* 145 *N.J.* 345, 363, 678 *A.*2d 699 (1996). Unlike title insurance, a suretyship, "require[s] the payment of money, generally where it is shown that an actual financial loss has been sustained by the indemnitee." *Appleman, supra,* § 3.2, at 348. A suit or obligation to another is not central to the surety. Rather, the surety itself consists of the agreement to pay a party if that first party sustains a loss. Although there may be a third party in a suretyship scenario, there need be no third party in order for a loss to be sustained and indemnified. We thus reasoned that a surety bond "did not constitute a commitment . . . to pay [the insured's] liability to a third party or to indemnify [the insured] for such liability," *Eagle Fire, supra,* 145 *N.J.* at 365, 678 *A.*2d 699, and we therefore found *Rule* 4:42–9(a)(6) to be inapposite. *Ibid.*[2]

---

[2] Although we subsequently approved the award of counsel fees in an action to enforce a surety bond, holding that the American Rule "does not preclude an allowance of reasonable counsel fees where the incurring thereof is a traditional element of damages in a particular cause of action," *In re Estate of Lash,* 169 *N.J.* 20, 33, 776 *A.*2d 765 (2001) (quoting Pressler, *Current N.J. Court Rules,*

Although both a holder of a surety bond and an owner of title insurance also may be the party that seeks to recover on it by filing an action against their insurance company, ownership alone—the token upon which the majority would rest its determination that *Rule* 4:42–9(a)(6) does not apply in this case—is clearly not dispositive. Even though the policy here is not a conventional third-party indemnity policy, the underlying effect of the insurance remains unaffected, namely, to indemnify the insured from liability to a third party. Like the owner of a title insurance policy but unlike a surety bondholder, Dr. Absatz's insurance indemnified him against liability for expenses owed to Shore.

In sum, I would find Shore eligible for a fee award under *Rule* 4:42–9(a)(6). The policy at issue satisfies the requirements for application of the Rule. It is a policy intended to indemnify Dr. Absatz for his overhead expenses in the event of his disability. Because the policy is a sophisticated instrument, which, by naming both owner and insured, has the beneficial effect of avoiding litigation between Dr. Absatz and Shore in the event of his becoming unable to pay his overhead expenses, it frustrates easy labeling as either third- or first-party insurance. Therefore, the result should turn on substance. For all the reasons expressed herein, I find this to be a third-party claim in substance. Because it is Dr. Absatz's interest in avoiding liability to Shore that is protected, I would hold that the policy is a third-party indemnity policy and Shore is entitled to fees under *Rule* 4:42–9(a)(6).

## IV.

For the reasons stated, I would reverse the judgment of the Appellate Division. Accordingly, I respectfully dissent.

Justice RIVERA–SOTO joins in this opinion.

---

comment 2.10 on *R.* 4:42–9 (2000)), this does not change the basic fact that "[a] surety policy is materially different from an indemnity policy and does not fall within that exception [to the American Rule]." *Id.* at 36, 776 A.2d 765 (Verniero, LaVecchia JJ., dissenting).

*For affirmance*—Chief Justice RABNER and Justices LONG, WALLACE and HOENS—4.

*For reversal*—Justices LaVECCHIA and RIVERA–SOTO—2.